[L. A. No. 3129.   Department Two.—July 24, 1913.]

## JOE PERETTI, Appellant, v. JOSEPHINE PERETTI, Respondent.

DIVORCE—DESERTION—ATTEMPTS AT RECONCILIATION BY DESERTING SPOUSE NOT MADE IN GOOD FAITH.—Where one spouse deserts the other, although the law permits the delinquent spouse to repent and seek reconciliation and restoration, and, if refused, makes it thereafter desertion on the part of the otherwise innocent spouse, the offer of the spouse originally at fault to resume conjugal relations must be made in good faith. Whether good faith exists in making such an offer is a question of fact, and the determination of that question by the trial court will not be disturbed if there is any ground for supporting it.

ID.—EVIDENCE—FINDING.—The evidence in this case is held to sustain the finding of the trial court, to the effect that the attempts of the plaintiff, after his desertion of his wife, to effect a reconciliation with her, were not made in good faith.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Powers & Holland, for Appellant.

LORIGAN, J.—Defendant in an action against her for divorce on the ground of desertion was personally served with summons and suffered default. The plaintiff thereafter brought the action on for hearing, and presented the evidence on his part, which was brief. The court denied a divorce, and entered judgment accordingly. Plaintiff moved for a new trial, which was denied, and he appeals both from the judgment and the order denying said motion.

Appellant insists that the conclusion of the court is not sustained by the evidence; to the contrary, he claims that under it the court should have granted an interlocutory decree of divorce in his favor.

This action was brought in September, 1911. Summarizing the testimony: the plaintiff himself testified that he and de-

fendant were married in 1904, had no children of their marriage and accumulated no community property. They lived together in a house in Los Angeles rented by him and in which his wife still resides. In June, 1910, he left his wife and took up his residence elsewhere in the city. As the reason for leaving he stated that they had some quarrels, but their nature is not disclosed; probably about money, as he stated that he delivered his pay checks to his wife, who would "cash the checks and pay the money to everybody and what little money is left she would put in the bank and just took care of herself." After he left his wife he passed their former residence daily, saw her nearly every day, but never spoke to her. Some two weeks after he left he sent his daughter by a former marriage and two other persons to have her take him back, but she refused; that he had a friend write letters to her in his behalf in which he offered to return, but she would not let him. As an excuse for not going to see her personally, he said that if he went she would "take an axe and cut my head"; that the offers he made to return to her were made in good faith.

Two witnesses, coemployees of the plaintiff in the Pacific Electric Company, testified that at the request of plaintiff they called twice on defendant and asked her to become reconciled to him and live with him, but she refused to do so. A third witness testified that at the request of plaintiff he wrote a couple of letters to the defendant making a similar request for him, and that in answer to them defendant wrote saying she did not like plaintiff any more; that she had better stay alone. The daughter who was living in the household when plaintiff left his wife, and who accompanied her father, stated that at his request she called on defendant and made a similar request that plaintiff be permitted to return, but she refused to agree to it; that on several other occasions she spoke to the defendant on the same subject, who answered that she did not want to go back to live with him. This amounts to the principal evidence produced by plaintiff at the hearing.

Undoubtedly, in this case, the plaintiff is anxious to obtain a divorce from defendant, and as evidenced by her default in not appearing or contesting the action she is indifferent whether he does or not. But the disposition of the parties in this regard is of minor legal importance. The law has more

regard for the maintenance of the marital relation than its severance, and while in a proper case it grants the innocent party a divorce, it will only do so upon satisfactory proof that this should be done. In this case the evidence shows that the plaintiff originally deserted the defendant after some trivial quarrel about money matters and under circumstances which did not afford, and it is not pretended constituted any legal excuse which would justify it. While the original deserter, he seeks to condone his act and throw the fault of desertion on the defendant because he offered to return to her and she refused to permit him. But while the law, where one spouse deserts the other permits the delinquent spouse to repent and seek reconciliation and restoration and if refused makes it thereafter desertion on the part of the otherwise innocent spouse, the offer of the spouse originally at fault to resume conjugal relations must be made in good faith. Whether good faith exists in making such an offer is a question of fact, and the determination of that question by the trial court will not be disturbed if there is any ground for supporting it. In this case the trial court was doubtless of the opinion that the attempts of the plaintiff to effect a reconciliation were not made in good faith, and we cannot say that this conclusion under the evidence was not correct. As we have said, there was no legal justification or excuse for the desertion and abandonment of the defendant by plaintiff in the first place. While admittedly at fault in the first instance, he never made any effort to personally have an interview with his wife; made no personal overtures toward reconciling their differences. He met her every day, but never spoke to her, a fact which of itself would impress upon her an utter indifference on his part as to their separation. He was daily ignoring her at a time, too, when he claims he was making efforts in good faith through the medium of his friends to effect a reconciliation. His only excuse for failing to see her personally or to talk over the matter with her is his statement that she would "take an axe and cut my head." There is not a particle of evidence that she ever treated him cruelly or made any threat against him, or that there was any serious disagreement between them save as to money matters, or that their usual relations to each other were not affectionate. A sincere desire to effect a resumption of their marital relations is somewhat inconsistent

with a belief on his part that such dire consequences would follow an attempt at a personal interview with his wife. It is true that he did send some persons to see her and also had letters written to her. When these letters were written does not appear. They were not written by him and there is no evidence that he could not write. The two persons who called on his wife were fellow employees where he was working. It does not appear that they were mutual friends of the parties nor is any reason suggested why either of them should have any influence with his wife. As far as the record discloses, they were strangers to her. They were sent shortly after he left her and at a time when she would be naturally smarting under the wrong and indignity inflicted upon her by plaintiff, not only in deserting her but in ignoring her existence. She doubtless resented the intrusion of these strangers in a domestic matter where plaintiff was at fault and where a fair consideration for the feelings of his wife must have naturally suggested to him that the proper course to pursue was to have a personal interview in which they could themselves adjust their differences and become reconciled. His wife had relatives living with her who would naturally have had more influence with her in attempting to effect a reconciliation with plaintiff than strangers would. He made no appeal to them, and it does not appear that they were unfriendly to him or would have refused to aid him if he had asked them. The evidence does not show that aside from sending these parties to see his wife right after his desertion plaintiff took any means during the year following to become reconciled to her. It is true that one of the witnesses stated that he had talked to defendant a few days before the trial about a reconciliation, and she refused it, but this was simply an incidental conversation and not the result of any immediate request on the part of the plaintiff to have him do so. This action was commenced by plaintiff a little over a year after he first entered into these negotiations with her to effect a reconciliation. He seems to have lost no time in applying for a divorce as soon as he thought it possible to obtain one.

Circumstances may be such as to excuse a spouse from visiting the other and making a personal effort toward an adjustment of difficulties which have separated them, but the reasonable and proper course and attended with the best results for

harmony is for the spouses to meet and adjust their difficulties themselves when it is possible, and no valid excuse is offered by plaintiff why he did not do so. Here the plaintiff did not even attempt to do so. He asked none of the parties he sent to his wife to obtain permission for a meeting between them; only that she take him back. Meeting her daily, he had neither a salutation nor a kind word for her; made no appeal to her, but treated her with indifference and aloofness, and this at the very time he was sending strangers to do what he might reasonably and opportunely have attempted at least to do for himself.

As we have said, it was for the trial court to determine whether the efforts on the part of plaintiff were made with honest motives and in good faith, or whether indifferently at a time and in a manner when he expected and desired that she would refuse to permit him to return and so that he might take advantage of such refusal as creating a situation which in due time he might take advantage of and secure a permanent separation in law as his conduct in deserting her in the first instance indicated his intention in fact.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.