DE VRY v. DE VRY.

No. 4106.     Opinion Filed May 4, 1915.

(149 Pac. 840.)

1.  DIVORCE—Grounds—"Abandonment"—Refusal to Accept Domicile. A husband has the right to choose the matrimonial domicile, and   if the wife refuses to accept such domicile, and without good cause refuses to follow the husband to such domicile, and for more than one year lives apart from him, it is abandonment, within the meaning of section 4962, subd. 2, Rev. Laws of 1910.

2.  DIVORCE—Appeal and Error—Grounds—Desertion—Offer to Return—Good Faith. Where, in such case, the party who was the original deserter in good faith offers to return, the fault of desertion will be thrown on the other spouse, if the offer is refused, and whether or not the offer to return is made in good faith is a question of fact, and the finding of the trial court will not be disturbed, if there is evidence to support it. .

3.  DIVORCE—Permanent Alimony—Excessive Amount. Where the husband and wife had lived together only a few months, the wife bringing no property to the husband on marriage, and the husband had no property, except some books, instruments, and medicines used in his profession of a physician, his earnings being about $60 per month in cash, and about as much more in accounts, of very doubtful value, an award of $500 for permanent alimony is excessive, especially where, pending the appeal, the husband has paid over $700 alimony pendente lite.

. (Syllabus by Devereaux, C.)

*Error from District Court, Alfalfa County;*

*J. W. Steen, Judge.*

Action for divorce by John V. De Vry against Lillian De Vry. Judgment for defendant on her cross-petition, and plaintiff brings error. Modified and affirmed.

The plaintiff, in his petition, alleges, as grounds for divorce, abandonment by the defendant, and in her answer the defendant denies the allegations of the petition and files a cross-petition asking for a divorce for herself on the ground of abandonment also. There are other allegations, both in the petition and cross-petition, but on the trial no other grounds, except that of abandonment, was insisted on by either party.

It appears from the evidence that the plaintiff and defendant were married on the 24th day of August, 1909, and that prior to the marriage it was discussed between them, and practically· agreed upon, that they should move to Oklahoma, where the plaintiff intended to practice his profession. In pursuance to this agreement, about two weeks after the marriage, they did go to Helena, Okla., where the plaintiff intended to practice as a physician. The evidence shows that the defendant had always resided in Chicago, and that she was very much disappointed at the accommodations she received in Helena; the rooms especially not being to her satisfaction. Just before Thanksgiving day in 1909, the defendant returned to visit her relatives in Chicago, with the full understanding, as far as plaintiff was concerned, that this visit was a temporary one, and that she would return to Helena. While in Chicago she wrote the plaintiff several letters, insisting that he return to Chicago, and that her family and friends would aid him in getting a position there. In accordance with these letters, the plaintiff did go to Chicago, and spent practically two months attempting to find a position, but, being unable to do so, he returned to Helena to practice medicine. The evidence shows that he requested the plaintiff by

letter and also verbally before he left Chicago to return to Okla-
homa with him, but she never returned, and stayed away until
this action was filed for divorce on the ground of abandonment
on the 3d day of May, 1911. The evidence, however, shows that
after the suit was filed for divorce, and prior, as far as the
evidence discloses, to her knowledge thereof, the defendant came
back to Oklahoma and offered to again live with the plaintiff
and resume their martial relations; in the words of the wife,
"I said I had come out here with my clothes and trunk and I
was here to stay," but that the defendant answered "that he had
filed suit for divorce, and that he was not affectionate any more,
and that he did not want her there." Although this was after
the action for divorce was commenced, there is no evidence in the
record to show that the defendant knew that the action had been
commenced, and there is evidence showing that a copy of the
publication notice and petition sent to her in Chicago was not
received until after her offer to return to her husband. There
was also evidence, on the subject of alimony, that the plaintiff
did not own any real estate and no personal property, except his
office furniture, instruments, books, and medicines, and that his
income from his practice was $50 or $60 a month in cash, and
including cash and accounts on his books from $100 to $125 a
month, and that he had very little success in collecting his
accounts. It also appears that the wife brought no property to
her husband on the marriage, and had no means, although it may
be inferred that her family were in comfortable circumstances, as
after her return to Chicago, about Thanksgiving day, and when
she was attempting to induce her husband to leave Oklahoma and
return to Chicago, they furnished a comfortable four-room flat
for them, rent free.

The trial court found the issues in favor of the defendant,
that she had been abandoned by her husband for more than one
year, and gave her $500 alimony and counsel fees of $146.
Exceptions were duly saved to this judgment, and the cause is
now brought to this court on error.

*J. Reeves Bell,* and *Robberts, Curran & Otjen,* for plaintiff in error.

*C. D. Roseman* and *H. J. Sturgis,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). The contention of the plaintiff in error is that the husband has the right to choose the domicile of the family, and it is the duty of the wife to accompany and live with him in the home so selected, unless there be good reason for her refusing to do so, and that a failure of the wife so to do is abandonment, authorizing a divorce. There can be no question that this statement of the law is correct. *Buell v. Buell,* 42 Wash. 277, 84 Pac. 821; *Franklin v. Franklin,* 190 Mass. 349, 77 N. E. 48, 4 L. R. A. (N. S.) 145, 5 Ann. Cas. 851; 14 Cyc. 612.

But the facts in the case at bar are not sufficient to apply this rule. It appears that, before the wife had notice of the divorce proceedings, she yielded to the will of her husband and consented to live with him, coming to Oklahoma for that purpose; and the trial court having found the issues in favor of the defendant, and there being evidence to support this finding, it cannot be disturbed by this court. In *Peretti v. Peretti,* 165 Cal. 717, 134 Pac. 322, it is held, in an action for divorce on the ground of abandonment, that:

"Where the party, who was orignally the deserter, offers to return, the fault of desertion will be thrown upon the other spouse, if the offer is refused, provided the offer to return be made in good faith and not simply to create a ground for divorce. Whether an offer by a spouse to return, after having deserted the other, was made in good faith, is a question of fact, and the determination of the [trial] court will not be disturbed when there is any ground to support it."

This case is directly in point with the case at bar. The wife undoubtedly was originally in fault in not following the husband to the marriage domicile established by him. The record entirely fails to show any good reason why she should not live in

Form No. 9.

Oklahoma; but on her offer to return, which the court by its finding in her favor has found was in good faith, the husband became a wrongdoer himself by refusing to allow her to do so.

On, the question of alimony, the court below allowed $500 as permanent alimony and an attorney fee of $146. Under the evidence in this case, we think this allowance of alimony was excessive. The parties had been married but a short time, and there is no evidence that any property was accumulated by the husband through the assistance of the wife, or that she had any property when she married which had gone to him. His income was in case between $50 and $60 a month, with doubtful accounts of about as much more. In allowing a gross sum of $500 in this condition of the husband's finances, we think the court erred. After this appeal was taken to this court, an order was made on October 1, 1912 requiring the plaintiff to pay into court the sum of $20 a month temporary alimony and $100 attorney fee. Under this order, he has paid into court the sum of $835. Under all of the circumstances of this case, considering the amount which the defendant has received under the order since October 1, 1912, and the undisputed financial condition of the plaintiff, we think the judgment for alimony should be set aside.

We therefore recommend that the judgment be modified by striking the judgment for alimony therefrom, and, as thus modified, the judgment below be affirmed.

By the Court: It is so ordered.