[Civ. No. 19461.   Second Dist., Div. One.   June 4, 1953.]

Estate of GABRIEL N. SAYEGH, Deceased.   ALICE AR-AXIE SAYEGH, Respondent, v. JOHN SAYEGH et al., as Executors, etc., Appellants.

Harris & Magdlen, Louis P. Pink and J. Perry Langford for Appellants.

A. G. Ritter for Respondent.

DORAN, J.—Executors of the estate of Gabriel N. Sayegh, deceased, are here appealing from a family allowance of $400 per month granted by the probate court to the respondent, decedent's widow. The judgment and order also declared void a certain antenuptial agreement executed by respondent and decedent on February 18, 1952, the day of their marriage. The decedent died six days later, on February 24th. At the time of the marriage respondent, by profession an electrical engineer, was some 21 years younger than the decedent who was in poor health.

The antenuptial agreement in question reads as follows:

"WHEREAS, first party and second party contemplate legal marriage under the laws of the State of California; and

"WHEREAS, it is their mutual desire to enter into this agreement whereby they will regulate their relationships toward each other with respect to the property each of them own and in which each of them has an interest:

"Now, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

"1. That all properties of any kind or nature, real, personal or mixed, wherever the same may be found, which belong to each party, shall be and forever remain the personal estate of said party, including all interest, rents and profits which may accrue therefrom.

"2. That each shall have at all times the full right and authority, and in all respects the same as each would have if not married, to use, enjoy, manage, convey and encumber such property as may belong to such party as set forth in paragraph (1) above.

"3. That each party may make such disposition of his or her property as the case may be, by gift or will during his or her lifetime, as each sees fit; and in the case of the decease of one of the parties hereto, the survivor shall have no interest in the property of the estate of the other, either by way of inheritance, succession, family allowance or homestead.

"4. That each party, in the case of a separation of the parties hereto, shall have no right as against the other by way of claims for support, alimony, attorney fees, costs, or division of property."

The instrument was duly signed by both parties and acknowledged before a notary public on February 18, 1952.

The record discloses evidence to the effect that the respondent, Alice Araxie Sayegh, first met the decedent in 1938 or 1939 and that "she started going regularly" with Mr. Sayegh in July, 1951. On September 1, 1951, decedent suggested that respondent stay at decedent's home during a vacation, from which date respondent continued to reside with decedent, "Shopping, cooking, running the household; as any wife would have." The respondent further testified that "The only thing that kept him from marrying me was the divorce decree" from decedent's third wife, which had not become final. During this period Mr. Sayegh was ill, suffered from heart disease, and in December, 1951, had the pneumonia and spent a week in a hospital.

There was much objection "From the Syrian Colony, from his brothers, from all his friends, no one wanted to see him marry me"; decedent was advised that "Everybody knows that you are loaded with money, she is after your money," to which Mr. Sayegh replied that "This is not the truth, she is willing to sign a paper for me." There is testimony that respondent, before the marriage, had stated, "Yes, I don't care about the money" which respondent knew had been willed to decedent's nephews; that "I just want to get married, I don't care whether he marries me one day before he died," and "I don't want nothing, I have a good position, I have money of my own."

On the morning of February 18, 1952, Gabriel N. Sayegh told the respondent that it was necessary to pick up the final divorce decree (from decedent's third wife) at the law office of Hahn, Ross and Saunders. Upon arriving there, according to Mr. Ross' testimony, "Mr. Sayegh and Miss Bakurjian (respondent) asked me to draw up an agreement, an ante-nuptial agreement between them in which Miss Bakurjian would agree to waive any interest in any of his property and to waive any claims that she may have against him by reason of being his wife." Mr. Ross "told her that as a result of this agreement she would never be able to get anything from Mr. Sayegh as a result of the marriage," and "She told me that she understood that." Respondent read the paper, both parties signed it and were married immediately thereafter.

The respondent testified that decedent went into the law

office while respondent was parking the car; that thereafter decedent talked with Attorney Ross alone in another office for 15 or 20 minutes. Upon returning, Mr. Sayegh said: ''Alice, I am going to have you sign an agreement in order to appease my brothers because they won't accept you''; this was the first time a property settlement had been mentioned. Respondent further stated that Gabriel (decedent) ''read it and that is all there was to it; I didn't even read it.'' Decedent further said, ''it meant nothing, he would destroy it when it had served its purpose, I shouldn't worry about it, it was only to appease his brothers so they would accept me,'' and that ''he would take care of me in another way, that this meant nothing.''

The respondent further stated that ''I didn't know I was signing away any rights of any kind,'' and that the paper would not have been signed if it had been known that ''it was in effect a waiver of all your rights.'' Respondent was informed at the law office, and believed that the paper was ''an acknowledgment what was his was his and what was mine was mine up to the time of our marriage, what we accumulated together was ours, and I told him I was willing to sign an agreement of that nature.'' Miss Grotsky, the notary, was not produced as a witness, and the only testimony as to what happened in the law office was that of respondent and Attorney Ross. As stated in appellants' brief, there was a direct conflict in the testimony of these two witnesses. The respondent's brief notes that Mr. Ross admitted that ''in many of the points the witness was'' somewhat hazy as to details.

In making the order for a family allowance of $400 a month in favor of Mrs. Sayegh, the trial court found that a confidential relation existed between the parties; that ''said signing by petitioner was not the free and voluntary act of said petitioner and that said document and the said signature of petitioner were procured and obtained by duress, menace, fraud and undue influence of said decedent . . . and that said document does not contain the true agreement of the parties and is null and void and of no effect.'' The court further found that ''petitioner had not waived any of her interest or rights as widow or any right to the estate of said decedent, or her right to family allowance, or otherwise''; that ''said agreement was not based upon any consideration to petitioner . . . and that petitioner is not bound thereby.'' The reasonableness of the family allowance ordered is not questioned.

Appellants' contention that "There is no evidence to sustain the findings of fact that fraud or undue influence was practiced by the decedent upon the petitioner" is not borne out by the record. As hereinbefore indicated, there were but two witnesses as to what transpired at the attorney's office, namely respondent and Attorney Ross, and the latter was "somewhat hazy as to details." The testimony of these witnesses is in direct conflict, and the trial judge was compelled to weigh the evidence and to determine relative credibility in respect to the testimony given. As pointed out in respondent's brief, "the lower court rejected the testimony of Ross on such matters as conflicted with the testimony of petitioner. This the lower court had the right to do."

It cannot be said, as maintained by appellants, that the testimony of the respondent widow "is highly improbable." The testimony of Mrs. Sayegh was positive, and the witness was not impeached. If this testimony is to be believed, and the trial judge who observed the witnesses did so believe, it appears, as respondent's brief affirms, "that never at any time was petitioner informed that she was waiving her rights to support in fact she was not informed about anything else but was taken advantage of in a manner which should not be countenanced."

The rule governing appellate courts in matters of this nature is well established. Where the record discloses substantial evidence in support of the findings of a trial court, a reviewing court is not permitted to become a trier of fact nor a weigher of conflicting evidence. As said in *Estate of Washington,* 116 Cal.App.2d 139, 144 [253 P.2d 60] (February 17, 1953), "On appeal from a judgment in a will contest, like any other civil action, the evidence most favorable to the respondent should be accepted as true, and that which is unfavorable should be disregarded. (*Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384].)" Applying this rule in the present case, appellants' contention cannot be sustained. The same may be said in respect to appellants' argument that the facts do not support a finding that there was a confidential relationship between decedent and respondent.

Both parties concede that "independent advice of counsel is not essential but is a circumstance to be considered in determining the validity of an antenuptial contract." In the present case it is admitted that respondent had no independent legal advice as to the nature and effect of the contract, and the trial court doubtless took this matter into consideration

along with the other circumstances shown by the evidence. Under express provision of section 1574 of the Civil Code, "actual fraud is always a question of fact."

In appellants' reply brief, joined in by attorneys for minor beneficiaries under decedent's will, it is urged that the judgment of the trial court "is not res adjudicata as against the testamentary beneficiaries of decedent, and is not binding upon them." As pointed out in a supplementary brief filed by the respondent, this point is now raised for the first time. It is not set forth as one of the grounds of appeal in appellants' opening brief; it was not raised in the motion for a new trial, and does not deal with any of the issues of the case.

An appellate court will not review questions which are only of academic interest (*Streator* v. *Linscott,* 153 Cal. 285 [95 P. 42]). It has likewise been repeatedly held that appellate courts are not disposed to consider points raised for the first time in appellants' closing brief (*Monk* v. *Ehret,* 192 Cal. 186 [219 P. 452]).

The judgment and order granting a family allowance to the respondent is affirmed.

White, P. J., concurred.