[Civ. No. 4724. Fourth Dist. Dec. 14, 1953.]

DOROTHY PORTIS, Respondent, v. RICHARD M. PORTIS, Appellant.

L. E. Dadmun for Appellant.

Nichols, Cooper, Hickson & Lamb for Respondent.

GRIFFIN, P. J.—On February 6, 1951, plaintiff and cross-defendant, hereinafter referred to as plaintiff, brought an action against defendant and cross-complainant (referred to as defendant) for separate maintenance, alleging extreme cruelty. Defendant, on March 6, 1951, filed a cross-complaint

for divorce alleging cruelty. On September 15, 1952, he filed a supplemental cross-complaint, alleging that on January 27, 1951, plaintiff willfully and without any reason or provocation upon his part, deserted and abandoned their home with the intention of deserting him and with the intention never to return and live with him as his wife, all of which was against his will and consent. It is then alleged that the reason for not setting up the ground of desertion in his cross-complaint was that when it was filed the one year of desertion had not elapsed but such period has now elapsed. Plaintiff denied generally and specifically these allegations.

The trial court found generally that plaintiff was not entitled to separate maintenance on her complaint and that defendant was not entitled to a divorce on either his cross-complaint or his supplemental cross-complaint.

The sole question presented on this appeal is: Did the trial court err in denying defendant a divorce on the ground of desertion? It is defendant's position that since both plaintiff and defendant alleged and proved, and since the court found, that the parties separated on January 27, 1951, and since the evidence conclusively shows that plaintiff deserted defendant by leaving the home which was established by them, defendant was entitled to a divorce on his cross-complaint as a matter of right, and that the trial court abused its discretion in denying him that right.

A review of plaintiff's evidence discloses that plaintiff and defendant were married on September 24, 1947; that they had two children; that they separated on January 27, 1951, and did not live together as husband and wife thereafter; that defendant operated a small, but financially unsuccessful machine shop near his parents' home; that when they were married plaintiff had $800 in the bank and that they lived with plaintiff's parents for about 16 months because the parents felt sorry for plaintiff because she needed their financial help; that defendant refused and failed to buy clothes for her and her babies; that after they were married plaintiff found defendant was a "dope fiend," constantly using sleeping pills; and that he admitted he had been released from an institution in Palo Alto, where he had been confined as a mental case. Defendant denied these general accusations.

Plaintiff testified that she soon used up her $800 in paying her husband's debts; that in the second year of their married life defendant fell behind in paying the gas bills, rent, and

for other necessities; that defendant told her they had been paid when they had not, and that the landlord threatened them with eviction on several occasions; that from the day they were married, defendant would drink excessively of wine and she would be unable to awaken him until about 11 o'clock in the morning to go to work; that he would tell her he was working late at the shop at nights and not return until 2 or 3 o'clock in the morning with liquor on his breath; that he refused to take plaintiff or the children out and spent very little time with them. She then testified that they separted on occasions but went back together again; that defendant threatened her with a gun and maliciously told her he was not the father of their last child but that plaintiff's father was.

Defendant admits making this last accusation but claims it was only said because he wanted her to stay home with the children and not go over to her parents' home so often; that they were evicted from the last home in which they lived for nonpayment of rent, on January 27, 1951 (the day they claim they separted). Plaintiff and the two children went home to plaintiff's parents and defendant slept in his work shop. The evidence discloses that the landlord subsequently obtained judgment in the small claims court for the unpaid rent.

Plaintiff's testimony was corroborated to a considerable extent by her mother. The day plaintiff left the home she left a note in it for defendant reading: ''Dick: If you move your books are in book-case in front room. Your clothes in bedroom and personal things in hall. You can give your mother all the food.''

It is defendant's contention that this note conclusively shows plaintiff's intention to desert defendant on that date.

Plaintiff, on cross-examination, testified she left her husband because she ''was forced to leave'' him and that she told him so. At the trial she testified that she, at that time, did not want to have anything more to do with him and would not go back to live with him under any conditions.

Defendant denied generally the testimony of plaintiff and testified that plaintiff left the home without his consent; that he would then be willing to take her back if she came voluntarily, ''for the sake of the children.'' It is from this evidence that defendant claims he was entitled to a divorce on the ground of desertion as a matter of right, since the court found she was not entitled to separate maintenance on the ground of extreme cruelty, and accordingly all presumptions of good faith on the part of the wife in reference to the separation were

dispelled, and that the filing of the action for separate maintenance, as alleged, when considered in connection with the evidence, emphasized her intent to desert him.

■ From the cold record on appeal it appears to us that extreme cruelty on the part of defendant was fairly well established by plaintiff's evidence. However, there being a conflict in the evidence, it is not our duty to determine that question. (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301].)

■ The court did find, however, in denying defendant's claim of desertion, that plaintiff "separated from the defendant in good faith, and not with intent to desert the defendant." In a memo opinion, the trial judge stated he was not of the opinion that the evidence was of sufficient weight to establish the allegations of cruelty on the part of either party; that as to the desertion alleged, he found that plaintiff commenced her action for separate maintenance and separated from defendant in good faith, believing that the evidence of cruelty was sufficient to justify a finding to that effect; that the statements made by her *at the trial* that she would not live with defendant were made under this belief; that when defendant filed his cross-complaint for divorce on the ground of cruelty on March 6, 1951, three months after the parties separated, it constituted a consent to the separation, and that the continuation of such separation under such circumstances would not create a cause of action for desertion, citing *Ewing* v. *Ewing*, 16 Cal.2d 208 [105 P.2d 586].

Counsel for defendant attacks this reasoning as not being supported by the cited case. In *Kusel* v. *Kusel*, 147 Cal. 52 [81 P. 297], relied upon in the Ewing case, it was said that where a wife in good faith begins an action for divorce against her husband and immediately separates herself from him for the reason that it would not be proper to live with him while she was prosecuting the action for divorce, such separation will not constitute desertion within the meaning of the law although in fact the suit was unfounded but, on the other hand, it will not be contended that a wife who intends to desert her husband can, with that intent, leave his residence and live separate from him, and at the same time destroy the effect of the desertion by immediately beginning an unfounded action for divorce against him. The action must be begun in good faith in order to have the effect contended for, and the burden of proof to show that an unfounded action for divorce begun

by the wife was begun by her in good faith is upon the wife. It is argued that the *good faith* there referred to applies to the *good faith* in offering to return and fulfill the marriage contract under section 102 of the Civil Code; that *Silva* v. *Silva,* 32 Cal.App. 115 [162 P. 142], also relied on in the Ewing case, involved a separation by agreement, evidenced by a written instrument; that the court there held no desertion was shown while the agreement was in effect; and that the holding in *Ewing* v. *Ewing, supra,* must be considered in the light of the facts set forth in the Silva and Kusel cases, which are cited as authority for the statement.

It is further contended that plaintiff failed to establish her allegations of cruelty, and consequently her withdrawal from or refusal to live with defendant in their home cannot be predicated upon defendant's claimed cruelty, citing *Perry* v. *Perry,* 93 Cal.App.2d 720 [209 P.2d 847]; and *Colombo* v. *Colombo,* 71 Cal.App.2d 577, 581 [162 P.2d 995]. But see *Hutton* v. *Hutton,* 109 Cal.App.2d 567 [241 P.2d 53], where it is said, quoting from the syllabus:

"Mere denial of divorce to wife does not necessarily mean that the court disbelieved her testimony; such relief may properly be denied where the judge feels that such testimony is not sufficiently corroborated."

It appears from the evidence that plaintiff did separate from defendant on at least one other occasion and returned to him upon his promise to maintain a home for her. At the time of the separation in the instant case on January 27, 1951, it is not indicated whether plaintiff intended to separate permanently from defendant or whether it was to seek an abode in which she and her children could live, due to the failure of defendant to provide one for them. The latter intent, at that time, appears to be more probable. Her action for separate maintenance was filed on January 30, 1951, and apparently defendant made no overtures toward furnishing a home for them or providing properly for plaintiff and their children, if she was inclined to return to him. He satisfied himself by seeking a divorce from her on the ground of extreme cruelty. The trial was commenced on December 11, 1952, and it was at that time she testified she would *then* not go back to him under any condition, and it was *then* that defendant first said he would be willing to take her back for "the sake of the children."

The amended cross-complaint for divorce on the ground of desertion was filed on September 15, 1952, alleging that more

than one year had passed since plaintiff "willfully and without any reasonable provocation on his part and against his wishes, deserted" him and that plaintiff refused to live with him.

Section 95 of the Civil Code defines "willful desertion" as the voluntary separation of one of the married parties from the other with intent to desert. Section 96 provides that ". . . the refusal of either party to dwell in the same house with the other party, *when there is no just cause for such refusal,* is desertion." It affirmatively appears in the instant action that there was just cause for plaintiff's refusal to dwell in the house in which they were living at the time. Section 99 of the Civil Code provides that "Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion."

The trial court may well have concluded that it was at the time of trial, about December 11, 1952, that plaintiff ultimately concluded not to return to defendant under any circumstances. This being so, the time of any claimed desertion would run from that date. Therefore, any ground of desertion based on a complaint filed in September, 1952, would be premature.

The ultimate finding of the trial court that plaintiff separated from defendant in good faith and without the intent to desert, and that defendant failed to establish desertion on the part of plaintiff on January 27, 1951, as alleged, is fully supported by the evidence. *Ewing* v. *Ewing, supra,* fully supports this conclusion. (See, also, *Brooks* v. *Brooks,* 53 Cal.App.2d 95 [127 P.2d 296]; *Peretti* v. *Peretti,* 165 Cal. 717 [134 P. 322]; *Baker* v. *Baker,* 168 Cal. 346 [143 P. 607, Ann.Cas. 1916A 854]; *Hutton* v. *Hutton,* 109 Cal.App.2d 567 [241 P.2d 53]; and Civ. Code, § 98.)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.