[Civ. No. 8525.   Third Dist.   Mar. 11, 1955.]

ELMA CONE, Appellant, v. DON C. CONE, Respondent.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Appellant.

Laughlin, McKalson & Crable for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment granting the respondent husband an interlocutory decree of divorce upon his supplemental cross-complaint, and awarding

to him as his separate property the major portion of the parties' realty and personalty. Appellant contends that there is a lack of evidentiary support for the trial court's findings that: 1. She was guilty of extreme cruelty; and, 2. That all but $6,500 in value of the property owned by the parties was respondent's separate property.

The parties married in 1941, at which time appellant wife was about 28 years of age and had a 3-year-old son by her former husband from whom she was divorced. Respondent husband was a 50-year-old widower without issue. He was, and for some time before the marriage had been, engaged in the implement business in Gridley, running what he described as a "one man concern." He also was the owner of a small house in which, after the marriage, he and his new wife lived until 1947, when he sold it for $4,000 and moved his family into a new home built on lots purchased by him in 1944 for $500. In 1943 a son was born to the marriage. In 1950 appellant left respondent and filed this suit for divorce. However, during February of 1951 the parties became reconciled, although the pending divorce action was not dismissed. Appellant again separated from respondent on July 7, 1952 and filed a supplemental complaint herein. Respondent interposed a supplemental cross-complaint and by the last two pleadings issues were joined as to the alleged extreme cruelty of each spouse toward the other and as to the nature and extent of their property.

The evidence on the issue of cruelty was in conflict. The trial court found that respondent had not been guilty of the cruelty with which appellant charged him and that respondent's allegations as to appellant's cruelty toward him were true. We hold that the evidence was sufficient to sustain these findings. Since both are challenged herein, we will relate, as briefly as may be, the evidence which, in our opinion, substantially supports the trial court's findings. Almost, if not all, of the acts which appellant and her witnesses gave in evidence in proof of appellant's charges against her husband occurred prior to their reconciliation after the first separation. By appellant and her witnesses respondent was described as stingy toward his family. They charged that he at times acted unfriendly and unsociable towards appellant's sister's "boy friend" and objected to his smoking in respondent's house; that on two occasions when friends from Sacramento visited at the family home respondent ignored them; that respondent's foster son, Bobby Stearn,

had for a time used the name of Cone and respondent ordered him to cease doing it; that on one occasion he refused to pay a foot specialist's bills for the child; that on one occasion some four years before the trial herein respondent scrubbed Bobby's teeth with a toothbrush when the boy had been using the brush with which to paint. Appellant testified she thought respondent spanked Bobby too hard and spanked him when he did not need it; that he refused orthodontistry for his own son; that he would not permit appellant to read the parties' income tax returns. Appellant's mother testified that her daughter had gone through an ordeal which she (the witness) felt might cause her to be mentally ill and to break up. In opposition, there was testimony that the family enjoyed but a small income and it could be inferred from the financial picture that being economical toward family expense was the way of wisdom; that the wife did not complain of being denied adequate funds; that the original allowance had been increased; that she had not asked for more; that when she ran short she asked and received additional sums. The net income was shown to be less than $200 per month. It was further shown that smoke irritated respondent and made him feel bad; that respondent's discipline of Bobby was only what seemed fairly to be called for and that appellant never remonstrated that respondent was being too severe; that Bobby liked the respondent and that near neighbors were aware of no ill treatment toward him from respondent. Shortly before the divorce action was filed, respondent took Bobby to Montana for a five weeks' trip, where they traveled through the mountains, rode, fished and hunted. Bobby expressed himself as being the luckiest boy in the world to have as good a parent as respondent. Enough has been said to show that the trial court's finding that respondent had not been guilty of extreme cruelty toward appellant is substantially supported. The issue was one of fact. ■ With respect to the showing that appellant had been guilty of extreme cruelty toward respondent, the record displays the following: When the couple married respondent had been living in a small residence. Within three years' time he moved his family into an attractive new home on which he had done a good deal of the construction work himself. About four years after the marriage, appellant, stating she desired an outside interest, asked respondent to build her a beauty parlor, she being a licensed beautician. He complied by converting a double garage into a beauty shop, which he fully equipped, spending some $1,500

for equipment. Appellant operated the same a few months and then let the business go. In June, 1950, respondent suffered a severe hernia while working. He became ill and unable to work at his hardware store for more than a few hours a day. In October he had a talk with his wife, explaining his inability to properly attend to the business. He told her it was running rapidly "into the red"; that he might have to seek a change of climate, that he might be hospitalized; and he asked her to reopen the beauty shop and help with the living expenses. Her only reply was to leave within two weeks and sue him for divorce. During the period that followed and before reconciliation she and her mother so alienated the affections of the two boys against respondent that when he called they were both fearful of him and would not come near him, although before separation both had been fond of him. When, on reconciliation, appellant returned to the family home, she insisted on using a separate bedroom and largely denied him marital relations. When respondent questioned her about a reason for her coldness toward him, she would not explain, but would simply say, "Oh, you know." Neighboring witnesses testified that she constantly complained to them about respondent's treatment of her and found fault with everything he did, unhesitatingly informing the neighbors about it. Respondent described the situation as one where it seemed to him he was "a meal ticket to be punched out as he was needed." On one occasion appellant talked with a neighbor about trips that respondent took into the mountains, although ill. The neighbor expressed the fear that due to his condition he might "go over a cliff." Appellant replied, "Well, wouldn't that be too bad," creating the impression in the mind of the neighbor that such a happening would be a welcome one. When she moved out the second time she did so without warning and just before respondent went to the hospital for a hernia operation. She revived her original action by a restraining order, preventing him from returning to his home when he left the hospital and compelling him to recuperate at a motel. She obtained this order upon her affidavit that she believed respondent would do her, her son, and respondent's son, bodily harm. This allegation, on hearing, the court found to be untrue and, so finding, set aside the order preventing him from returning to his home. He returned and on the first evening, while sitting on his front porch talking with two neighbors, the wife showed up with a policeman and ordered the officer to arrest respondent for "molesting"

her, an allegation which was shown to be false. There was no evidence whatever that he had ever struck or chastised defendant or so much as threatened to do so. Under the circumstances shown in the evidence the conduct of appellant toward respondent was such that the trial court was justified in the finding it made. ██ The corroboration, while not nonexistent, as argued by appellant, was slight; but slight corroboration is sufficient where, as here, there is no danger or claim of collusion. The parties contested every vital issue posed by the pleadings. (*Portis* v. *Portis,* 122 Cal.App.2d 36 [264 P.2d 102]; *LaVigne* v. *LaVigne,* 96 Cal.App.2d 531 [216 P.2d 75]; *Ruggles* v. *Ruggles,* 43 Cal.2d 547, 548 [275 P.2d 42].)

We hold that the decision of the trial court as to the separate and community property must also be upheld. We think it unnecessary to follow respective counsel in their varying presentations of the evidence concerning the property issues. The trial court evidently followed the rule laid down in the case of *Pereira* v. *Pereira,* 156 Cal. 1 [103 P. 488; 134 Am.St. Rep. 107; 23 L.R.A.N.S. 880], which rule has found frequent application and constant approval under facts similar to those presented by this record. When these parties were married respondent had for some time been engaged in a small implement and hardware business self-owned and largely self-operated. He owned the property on which the business was being conducted, the stock in trade and a considerable amount of cash in bank and in safety deposit. According to his counsel's computations, which are within permissible inferences drawn from the evidence, the value of respondent's property, which was his separate property at the time of marriage, was something about $32,000. There has been very little net gain through the years, and such as there has been, when expressed in dollar valuations, arise principally from the increase in value of his real property and from inflation. ██ When, as here, the income of the husband and the wife is produced by the use of the husband's separate property, which was his before marriage, and by his management thereof, that part of the income which is due to the personal character, energy, ability and capacity of the husband is community and the rest is separate. (*Pereira* v. *Pereira, supra,* p. 7.) As the court there said:

". . . Without capital he could not have carried on the business. In the absence of circumstances showing a different result, it is to be presumed that some of the profits were

430

justly due to the capital invested. There is nothing to'show that all of it was due to defendant's efforts alone.''

In *Estate of Cudworth*, 133 Cal. 462, 468 [65 P. 1041], it was stated:

''. . . Where a husband, charged with the support of a family, has some income derived from his separate property, and some from his earnings which are community property, there is no presumption that he has supported the family out of the separate property and preserved intact the community funds. He is at perfect liberty to devote all that is necessary of the community earnings to the family support, and to preserve his separate property intact.'' (See also *Thomasset* v. *Thomasset*, 122 Cal.App.2d 116, 126 [264 P.2d 626] ; *Huber* v. *Huber*, 27 Cal.2d 784, 792 [167 P.2d 708].)

We have this situation: The respondent, engaged in business through the use of separate property, married and continued his business. He devoted his time, ability, experience and industry thereto. Hence, a part of the gross income is community property and part is separate. The proven family expense nearly equaled the net income allocable to both community and separate income. The parties lived frugally and at the end of the matrimonial experience the net worth of the husband exceeded by little, if by anything, the value of the property owned by him at the time of marriage. The trial court held that the total net gain did not exceed about $9,000. Within this there is contained inflationary values of real property still held by respondent. We hold that the trial court was fully justified in finding that the fair share of the total gain to be allocated to the community amounted to $6,500. Of this the trial court awarded one-half to the wife, although finding her guilty of extreme cruelty toward her husband. Such a result cannot be successfully challenged on appeal.

Appellant complains that the trial court failed to properly find specifically and adequately upon the property issues. However, the trial court did find the ultimate facts and it was not necessary that it find and fix the specific value and character of each item of property. (*Thomasset* v. *Thomasset, supra*; *Pope* v. *Pope*, 102 Cal.App.2d 353, 372-374 [227 P.2d 867].)

Appellant argues that the proper rule of law applicable to the property issues is the rule concerning commingling of community and separate property. She charges that such commingling took place here and that substantially all of the

·property must, therefore, be found to be community. In support of her argument, appellant quotes the rule on commingling as stated in 10 California Jurisprudence, 2d, 702, ''Community Property'' section 35:

''Where separate property or funds are intermingled with community property or funds, the respective property or funds remain unchanged in character so long as they can be clearly ascertained. . . . Accordingly, if separate property or funds which have been commingled with community property cannot be traced, the entire mass is treated as community property.''

The text continues: ''However, if the community property is inconsiderable in amount as compared with the separate property confused and blended with it, the whole seems to be treated as separate property.''

We think the court properly considered here that the exception to the commingling rule stated in the last sentence of the foregoing quotation ought in major part to be applied to the case before us. What we have already said sufficiently shows that the community property which might have possibly been accumulated was of necessity inconsiderable in amount as compared with the separate property which respondent owned upon his marriage. As said in *Cline* v. *Cline,* 4 Cal.App.2d 626, 629 [41 P.2d 588]:

''. . . It is also true that where the community interest is inconsiderable in the property with which it has been intermingled the community will not draw to itself the separate estate (*Estate of Cudworth,* 133 Cal. 462 [65 P. 1041]; *Estate of Granniss,* 142 Cal. 1 [75 P. 324]; *Estate of Pepper,* 158 Cal. 619 [112 P. 62, 31 L.R.A. N.S. 1092]).''

Upon the whole record we are satisfied that the trial court's decision is supported by the evidence.

The judgment appealed from is, therefore, affirmed.

Peek, J., and Schottky, J., concurred.