[Civ. No. 9774.   Third Dist.   July 12, 1960.]

HELEN VOGEL, Appellant, v. BEN VOGEL, Respondent.

Duncan Davidson for Appellant.

Smith & Zeller for Respondent.

PEEK, J.—Plaintiff was granted an interlocutory decree of divorce from defendant upon the ground of extreme cruelty. The decree awarded her the sum of $11,500 as her share of the community estate and certain personal property but made no provision for permanent alimony. Her appeal is only from that portion of the decree which denied alimony.

Her sole contention is that in view of the facts and circumstances presented the trial court abused its discretion in denying her permanent alimony. From our examination of the record, it is our conclusion that such contention is not well taken.

"The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn,* 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances,

consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381].)'' (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249].)

▮ The record when viewed in light of the above rule shows that plaintiff and defendant were married in 1953 and separated slightly more than four years later. At the time of the marriage plaintiff was 51 years of age and was managing an apartment house in San Francisco, for which she received $60 a month and the free occupancy of an apartment. Defendant, who at that time was 60 years of age, was a partner with his son in the produce business in Stockton. Each party had an adult child by a previous marriage.

As shown by the evidence, plaintiff's two main complaints against defendant at the trial were first that he was stingy and refused to give her adequate spending money; and second that he mistreated her physically. The only testimony as to her first complaint was given by herself and was wholly uncorroborated. In fact, to the contrary, there was uncontradicted evidence that the parties maintained a joint checking account in which there was an average credit balance of approximately $1,000. Likewise uncontradicted was the fact that charge accounts were opened in plaintiff's name at various stores. It is also uncontradicted that while on extended trips to New York, Europe, the Philippines and Australia, plaintiff spent many thousands of dollars on presents for friends and relatives. Such facts would not only appear to refute plaintiff's charge that defendant was penurious but, to the contrary, would make it seem that he was exceedingly generous.

The only evidence in support of plaintiff's charge of cruelty was her own testimony that during the final quarrel which precipitated her leaving defendant he twisted her arm and struck her. Defendant categorically denied such charges but frankly admitted that in the heat of the argument he did throw a cup which broke a chandelier. Plaintiff made no attempt to corroborate her testimony in this regard either by calling as witnesses the neighbors with whom she testified she had spent the night, or the doctor whom she testified had treated her for her alleged injuries.

The only incident concerning which she testified and which in any way was corroborated occurred while the parties were in Spain and during a visit with plaintiff's daughter. Her testimony was merely that on one day defendant was abusive

because she was unable to get up and cook his breakfast. In corroboration plaintiff's daughter testified that on the evening of the day in question she had to persuade defendant to come to the dinner table. Her testimony was that ". . . Mother was crying and she was upset. And so I started to cry, too. But after awhile we got to talking and everything was all right after that." The daughter further testified that during the visit her mother was much more nervous than usual and very upset all the time. This testimony is the only evidence whatsoever corroborative of plaintiff's charges of cruelty.

The record discloses additional testimony by defendant's son that the difficulties of the parties appeared to stem from the time he, at defendant's request, attempted to explain to plaintiff the provisions in a will drafted by defendant. The provisions were to the effect that plaintiff would have a life estate in the family home and a monthly income for her lifetime. His testimony was that when plaintiff heard the nature of the provisions she became angry, stating that she was not interested in a monthly payment but wanted cash.

Following the separation of the parties the plaintiff withdrew $400 from the joint bank account and during the year preceding the entry of the interlocutory decree, and pursuant to a stipulation and an order of the court based thereon, she received $400 a month as alimony pendente lite. At the time of trial it further appeared that plaintiff was sharing an apartment with her daughter who is employed by the federal government.

In support of her contention that the trial court abused its discretion in disallowing her prayer for alimony, plaintiff relies on cases such as *Webber* v. *Webber*, 33 Cal.2d 153 [199 P.2d 934]. However we find nothing in the present case which is comparable to the situation presented there. In that case the parties had been married for 36 years and had eight children, and the property awarded to the wife was only a $25 savings bond. In the instant case plaintiff had received $4,800 in alimony pendente lite and an additional $400 which she had taken from the joint account. Also she was awarded the sum of $11,500 cash. Both parties had been previously married for a considerable length of time. The present marriage had lasted for only slightly more than four years. There was no issue of the marriage. The plaintiff's testimony that she was in poor health was not corroborated. There was a lack of any aggravated evidence of acts of cruelty on the part of the defendant; and although the defendant's earnings dur-

ing the marriage ranged from slightly over $4,000 in 1953 to more than $30,000 in 1957, the business suffered a loss of $52,000 in 1958. Under all of the facts and circumstances as presented to the trial court, we cannot say that it abused its discretion in denying plaintiff permanent alimony. (*Blackburn* v. *Blackburn*, 160 Cal.App.2d 301 [324 P.2d 971].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.