[Civ. No. 6397. Fourth Dist. Jan. 3, 1961.]

ELIZABETH BELMONT, Respondent, v. FRANK BELMONT, Appellant.

G. V. Weikert for Appellant.

Forgy & Forgy for Respondent.

GRIFFIN, P. J.—Plaintiff-respondent and her defendant-appellant husband were married in 1943 and separated in 1959. There were no children the issue of the marriage. Plaintiff, aged about 47 years, brought this action for divorce against her husband, aged about 70, alleging extreme cruelty and seeking distribution of the community property, support money, attorney's fees and costs. She stated she did not have particular knowledge of the description of the community property but asked leave to amend her complaint when it was ascertained. She also alleged that prior to the marriage she was caused to sign an agreement entitled "marriage contract" which was attached to her complaint. After listing defendant's property it provided generally that the parties desire, by antenuptial agreement, to fix and determine the rights that will accrue to each in the property and estate of the other by

reason of the anticipated marriage, and to accept the provisions of the agreement in lieu and in full discharge and satisfaction of all such rights; that the defendant shall, during the marriage, remain the owner of the property therein referred to, together with the income, rents, issues, profits and increment thereof; that a specified formula shall be used to determine what portion of the net income derived from the operation of defendant's business shall be defendant's separate property and what portion shall be deemed to be community property; and that in the event of a permanent separation, for any reason, after the contemplated marriage, the property rights of the parties and plaintiff's claims and rights to support, alimony, attorney's fees and court costs shall be adjusted and settled in a specified manner. Plaintiff then prayed that the marriage contract be declared void and of no effect.

At the trial, on March 31, 1960, neither defendant nor his counsel appeared. On April 8, 1960, an interlocutory decree was entered which recites that after the introduction of evidence, plaintiff moved to amend paragraph IV of her complaint to conform to proof and the court ordered that that paragraph be amended to conform to proof. The court therein stated that there is community property of the parties, describing it as consisting of a note due defendant in the principal sum of $85,000 (which note was not mentioned in the marriage contract); proceeds of the sale of the Anaheim grove mentioned in the marriage contract totalling $262,500; 201 shares of stock; two automobiles and additional community property not then known to plaintiff and not stated in the marriage contract. The court granted plaintiff a divorce and declared the antenuptial agreement void. It granted plaintiff one automobile, the promissory note, 201 shares of stock, and ordered defendant to pay plaintiff $350 per month support money plus $3,000 attorney's fees and costs and the court retained jurisdiction over all other community property which may be subsequently discovered.

Appellant contends that the trial court erred: (1) in granting the divorce, due to insufficiency of the evidence to show extreme mental cruelty and lack of corroborating evidence; (2) in granting plaintiff's motion to amend the complaint; (3) in awarding plaintiff the specified property and retaining jurisdiction over unspecified property; (4) in awarding permanent alimony of $350 per month; and (5) in awarding plaintiff attorney's fees in the amount of $3,000.

As to the first contention, the testimony of plaintiff

is that defendant went nearly every weekend to Las Vegas and gambled; that this went on for nearly eight years "in earnest" and started about 12 years ago; that for about eight years she went with him to Las Vegas; that she didn't believe in gambling or drinking; that she saw him gamble and lose sums of money represented by cancelled checks ranging from $1,000 to $3,000 which came back with his bank statement; that defendant did not drink much but what drinking he did interfered, in a way, with her happiness; that her husband was an orange grove operator at the time of the marriage; that shortly before their marriage defendant bought a run-down ranch home and a 65-acre orange grove for $12,000 down and that a balance of $12,000 was paid later, and that after their marriage they improved the land and house over a three-year period; that defendant sold this ranch in September 1958 at a claimed price of $250,000 net to him and that their joint income-tax return showed he sold it for $262,500; that he never gave her any portion of this money; that within the last two years defendant sold everything he owned, including their home, ranch property and packing house, plus the business; that income-tax return shows the packing house sold for $88,000, secured by a promissory note for $85,000 dated February 1, 1959, at 7 per cent interest; that the old packing house was built before their marriage but defendant leased another one and equipped it in 1950-1951; that about three days before they were married defendant took plaintiff to Los Angeles to his attorney's office and defendant's attorney told defendant he was making a mistake in having plaintiff sign the document there prepared and wanted to know if defendant would not reconsider the idea; that plaintiff read the document and it was a marriage contract asking her to never claim anything that he owned; that defendant never discussed with her what he owned but she knew he owned the packing house in Anaheim; that they separated in 1959 and he moved to Las Vegas, taking one car and leaving the other with her, which was registered in his name.

Plaintiff then testified that she was without funds to prosecute the action and that she was accustomed to having paid to her by defendant approximately $1,000 every three months for household expenses; and defendant's joint income-tax for 1958 was $25,650, which was still unpaid.

As a corroborating witness, plaintiff called a friend who testified as to residential statistics and that on one occasion she

saw defendant gambling and that plaintiff stayed at her home on weekends occasionally and told her defendant was in Las Vegas gambling. Upon this evidence, the court granted the divorce decree and denied defendant any relief.

From a complete examination of the testimony as to any extreme *mental cruelty* which plaintiff alleged she suffered, the evidence does not contain any testimony that she suffered any grievous mental cruelty and the question was not directly asked of her. Counsel for plaintiff asked:

"Q. Mrs. Belmont, you have stated in your complaint that the defendant, Mr. Belmont, treated you with extreme cruelty. Would you please state, specifically, what particular acts constituted that extreme cruelty? A. Well, mainly, his leaving practically every weekend and going to Las Vegas and gambling."

Plaintiff stated that she went with defendant on his trips to Las Vegas for eight years. There is no testimony that she remonstrated with him about this or that he ever refused to remain at home with her. Whether he lost or made money at the gambling tables is not indicated. At that time he could probably well afford the losses indicated and there is no showing that she suffered any hardship thereby. The complaint charged the defendant with extreme cruelty and that he wrongfully inflicted upon plaintiff grievous mental suffering. ▮ In *Negley* v. *Negley*, 82 Cal.App.2d 355, 358 [186 P.2d 151], this court said:

"It is well established that where the wrong complained of by the injured spouse is grievous mental suffering with no claim of bodily injury, the grievous mental suffering is the ultimate fact which alone will entitle a party to a divorce and unless such mental suffering is established as a result of the acts of the other party, a judgment awarding a divorce cannot be sustained." (Citing cases.)

▮ It is also the rule that where the acts complained of were such as to inevitably cause grievous mental suffering, a trial judge is justified in drawing the inference of such suffering from those acts, but in the instant case, there being no claim of bodily injury, the conduct complained of by plaintiff was not of such a nature as to compel the inference of grievous mental suffering, so there should have been proof showing such grievous mental suffering to support the decree, and there is none in the record. In *Ritter* v. *Ritter*, 103 Cal. App. 583, 587 [284 P. 950], it is held that grievous mental

suffering must be established because the mental anguish is the ultimate fact entitling the injured party to a severance of the marital ties.

The trial judge asked plaintiff further questions about this point. They were as follows:

"Q. (by the court) Mrs. Belmont, you have stated in your complaint that the defendant, Mr. Belmont, treated you with extreme cruelty. Would you please state, specifically, what particular acts constituted that extreme cruelty? A. Well, mainly, his leaving practically every weekend and going to Las Vegas and gambling.

" . . . . . . . . . .

"Q. Did you at any time join him on these trips to Las Vegas? A. No, because I don't believe in gambling, and there was nothing for me to do as I don't drink or gamble."

The trial judge then asked if Mr. Belmont drank and she said, "Well, he does on occasion. I mean he does with the boys."

"THE COURT: Did you ever feel that interfered or was a part of the cause of your difficulty?

"THE WITNESS: Well, he didn't drink to that extent, no, sir. It was the gambling that I was more against, because I felt that he was old enough to know whether the liquor was doing him any harm or not.

"THE COURT: Did it interfere with your happiness, the use of it?

" . . . . . . . . . .

"THE WITNESS: I don't object to it because my parents were born in Europe. I don't object to it. But I don't like to see people drink.

"THE COURT: That is what I am asking, did it interfere with your happiness, his use of it?

"THE WITNESS: Well, in a way I would say, yes."

If we should charitably hold that this testimony constitutes evidence that plaintiff suffered grievous mental suffering due to the conduct of defendant, the next question arises: Was there sufficient corroboration of this fact by any other witness as required by section 130, Civil Code? The only possible evidence is a friend's statement that plaintiff, many times, on weekends, visited with her in her home and plaintiff remarked that her husband had gone to Las Vegas. She did not testify that plaintiff complained of this fact or that it appeared that plaintiff was suffering any grievous mental anguish from it.

She did testify that on one occasion she saw defendant gamble. The time, place or occasion was not indicated.

█▌ It is true that the main purpose of section 130, *supra*, in reference to corroboration, is to prevent collusion (*Andrews* v. *Andrews,* 120 Cal. 184, 186 [52 P. 298]), and corroboration of every act sworn to by the plaintiff is not required. █▌ Evidence, circumstantial or direct, substantially tending to confirm the plaintiff's testimony upon a considerable number of material facts is sufficient. (*Percy* v. *Percy,* 188 Cal. 765, 767 [207 P. 369].) █▌ In the instant case, plaintiff did not testify that any act of defendant caused her grievous mental suffering and the nature of the acts charged and the fact that she went with him to Las Vegas for eight years and apparently condoned these acts and later preferred to remain at home on weekends would not give rise to an inference that she suffered grievous mental anguish or that defendant was guilty of any extreme physical cruelty.

The question of the granting of the divorce is not the only issue here presented. It has been held that community property of the parties may be apportioned in such an action even though the divorce is denied. (*Mason* v. *Mason,* 219 Cal. 111 [25 P.2d 461] ; *D'Alessio* v. *D'Alessio,* 56 Cal.App.2d 118, 120 [132 P.2d 271].) Whether the court would have apportioned the so-called community property in the absence of granting a decree in the instant case is problematical. We will therefore consider the third point raised : whether the court erred in awarding the specific property described in the findings as community property to plaintiff as her separate property.

The testimony of plaintiff as to the character of the property awarded is not very definite. As we construe it, defendant did possess considerable separate property prior to his marriage to plaintiff and she then owned no appreciable amount of property. The parties were married in Las Vegas and defendant took the pains to specify the specific property he then owned and there appears to be no dispute about this fact. This was admitted by plaintiff in the prenuptial agreement and referred to in plaintiff's complaint for divorce. Plaintiff's complaint in this respect is that defendant did not, at that time, disclose all of the property he then owned as his separate property and its value and nature, and she did not realize the effect of this instrument, and accordingly her signature was obtained by fraud and undue influence. Her only testimony in respect to any fraud or undue influence was that defendant never discussed his business affairs with her and

she promised him before their marriage that she would never talk to him about it in any shape or form; that she did read the "marriage contract" before she signed it and she stated it was a contract "asking me never to claim anything that he ever owned"; and that all she knew was that he had a packing house in Anaheim. The so-called "marriage contract" signed by plaintiff did specify that defendant was then the owner of (a) a citrus fruit packing house, (b) goodwill and assets of the business operated by him as a packing house under the name of Granada Packing House, (c) and (d) house and lots in Alhambra, and (e) 64-acre orange grove in Anaheim. It then provides that defendant would be entitled to all income or increments therefrom. An exception was made as to the packing house. It provides that defendant would be entitled to $12,000 per annum deducted from the net income therefrom and said sum would be his separate property and not community property and the balance of the net income would be community property, and in case of separation of the parties all property rights would be adjusted as follows: That the $12,000 above mentioned shall be defendant's separate property and not community property and defendant agrees to pay plaintiff $5,000 and convey to her one-half of the community or partnership interest in the packing house, whether it be in cash or invested in some form of property; that any claim to alimony, attorney's fees and court costs is specifically waived.

Plaintiff's complaint sets forth the marriage contract and specifically acknowledges that she signed it, but claims fraud and undue influence as above indicated. Defendant's answer denies this and claims that all of the property mentioned therein was his separate property. The evidence does not specifically show that plaintiff did not know the document she signed purportedly waived any of her rights to the property arising through her status as a wife (as was found sufficient in *Estate of Sayegh*, 118 Cal.App.2d 327 [257 P.2d 995]). She did not state that she would not have signed it had she known this. Since defendant stated in his answer that he had no objection to setting this contract aside, we will not further discuss the point. Undoubtedly, all of the property mentioned therein was his separate property at the time of the marriage. As we view the evidence, there is no conflict in reference to the fact that defendant owned, as his separate property, the Granada Packing House located in Anaheim and all of its equipment prior to the marriage. There is evidence although

not clear, that this packing house burned and defendant, about 1950-1951, leased another packing house in Fullerton and moved his entire business there, and it was also known as Granada Packing House. The proceeds of property insurance take the character of the insured property. (*Nilson* v. *Sarment*, 153 Cal. 524, 529 [96 P. 315, 126 Am.St.Rep. 91]; 10 Cal.Jur.2d, § 28, p. 696.) It appears that this business was sold to the Polar Chilled Products Company for $85,000, evidenced by the promissory note above mentioned, dated February 1, 1959, plus 201 shares of that corporation's stock valued at $100 per share. It is this same note and the same 201 shares which the trial court found to be community property and awarded them to plaintiff as her separate property.

While it is true that all property acquired by either spouse during marriage, except that acquired by gift, bequests, devise or descent, is presumed to be community property, in *Garten* v. *Garten*, 140 Cal.App.2d 489, 492-493 [295 P.2d 23], the general rule is stated to be that:

". . . the character of property as separate or community is fixed as of the time it is acquired. The character so fixed continues until it is changed in some manner recognized by law, as by agreement of the parties. . . .

"The commingling rule does not apply where, as here, the husband's separate property has not lost its individual identity but can be clearly segregated and identified."

In *Cone* v. *Cone*, 131 Cal.App.2d 424, 431 [280 P.2d 871], the court said that: " '. . . if the community property is inconsiderable in amount as compared with the separate property confused and blended with it, the whole seems to be treated as separate property.' "

It is not evident from plaintiff's testimony and other evidence produced that the assets of the Granada Packing House were anything but the separate property of defendant. Plaintiff gave no testimony that these assets were community property. There is no presumption that community funds were used to improve separate property. (*Seligman* v. *Seligman*, 85 Cal.App. 683 [259 P. 984].) While there are some exceptions, it is nevertheless true that as a general rule, in the absence of an agreement to the contrary, where improvements are made upon the husband's separate real property with community funds, the improvements acquire the character of his separate property and belong to the husband. (*Wheeland* v. *Rodgers*, 20 Cal.2d 218, 222 [124 P.2d 816].)

In any event, the evidence, beyond any reasonable

doubt, shows that if there was any community property in these particular assets which could reasonably be attributable to the earnings of the husband during the marital relationship, the trial court failed to find such proportionate interest and a finding on that subject was necessary. In *Huber* v. *Huber,* 27 Cal.2d 784, 792 [167 P.2d 708], the rule in this respect is stated to be:

"In regard to earnings, the rule is that where the husband is operating a business which is his separate property, income from such business is allocated to community or separate property in accordance with the extent to which it is allocable to the husband's efforts or his capital investment."

 It has frequently been held that a proper method of making such allocation is to deduct from the total earnings of the business the value of the husband's services to it. The remainder, if any, represents the earnings attributable to the separate property invested in the business. See *Estate of Hale,* 170 Cal.App.2d 351, 357 [338 P.2d 997]; *Wynn* v. *Wynn,* 170 Cal.App.2d 484, 488 [338 P.2d 930].

 This same conclusion must be reached in reference to the 64-acre orange grove and residence thereon. Plaintiff testified defendant paid $12,000 of his separate property down on the purchase price of this property and the balance of $12,000 thereafter. From what source this final payment was made is not indicated. It does not appear that it was from revenue from the ranch, since the place was badly run down and had very few orange trees on it. It was developed thereafter, and in 1945, 40 acres of young trees were planted. Apparently both plaintiff and defendant expended efforts on the ranch in this respect. It was sold in 1957 at some increased profit, which net profit was not determinable from the evidence. When plaintiff and defendant first moved into the house they expended $11,000 by way of furnishings and plaintiff took these furnishings with her when the parties separated. It apparently appears that more evidence should have been taken indicating the amount of the community interest there was in this property or the proceeds of the sale remaining at the time of the trial and make findings thereon so there could be a sufficient opportunity for a reviewing court to determine the propriety of the award. There is no particular evidence showing what assets defendant owned at that time and what his liabilities were, including the $25,650 joint income tax still due, and whether the award made was in the proper proportion allowed by law.

When a decree of divorce is granted on the ground of extreme cruelty, a greater portion of the community property may be awarded to the prevailing party than is allowable when the divorce is granted on certain other grounds. We have concluded that there was not sufficient evidence produced of defendant's claimed extreme cruelty by virtue of causing plaintiff extreme mental suffering and that any such evidence was not sufficiently corroborated, and the question of the amount of the award of the community property is so dependent on this question that a reversal of the judgment as a whole becomes necessary. On a retrial, further evidence may be produced, not only on the question of extreme cruelty but on the question of the amount and extent of the community property available for division.

In addition, it appears that during the trial of this action, when defendant and his counsel failed to appear, apparently relying on the pleadings, counsel for plaintiff orally and without notice to defendant moved to amend paragraph IV of the complaint, which amendment did make considerable change in it. Counsel stated he would like to change the wording:

"There is community property of the parties however plaintiff at this time has no knowledge as to the description, extent, or nature thereof and upon ascertaining such will ask leave to amend her complaint to fully describe such community property";

To: "There is community property of the parties, to wit: The proceeds due and owing on that certain promissory note, which has been previously referred to, wherein Polar Chilled Products is the maker and Frank Belmont is the payee";

And that: "The proceeds or a portion thereof realized from the sale of the ranch on North Batavia Street, which proceeds are in the amount of $262,500.00, are community property of the parties."

After some discussion, the court orally granted the amendment. The record before us does not indicate such amendment was ever pleaded in writing or filed in the action or that any notice of these amendments was served on defendant or his counsel. The record does not indicate the motion was made "to conform to proof." The only place it appears is in the interlocutory decree. Although plaintiff argues this point, she concludes with the statement that the pleadings were sufficient in themselves without the amendment to obtain the relief granted and cites authority to the effect that the court is authorized to make an amendment for that purpose. (*Stitt*

v. *Stitt,* 8 Cal.2d 450 [65 P.2d 1297]; *Kent* v. *San Francisco Sav. Union,* 130 Cal. 401 [62 P. 620]; *Cummings* v. *Cummings,* 75 Cal. 434 [17 P. 442]; *McKee* v. *Mires,* 110 Cal.App.2d 517 [242 P.2d 954].) Section 473, Code of Civil Procedure, provides in part:

"The court may likewise, in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars; . . ."

See also *Gerardo* v. *Gerardo,* 114 Cal.App.2d 371, 374 [250 P.2d 276]; *Stack* v. *Welder,* 3 Cal.2d 71 [43 P.2d 270]; and *Blackwell* v. *Blackwell,* 86 Cal.App.2d 513 [194 P.2d 796], where the defendant filed an answer but appeared at the trial by attorney only and introduced no evidence. The court there said:

"It is well settled that where a divorce decree is entered in a default action, the relief granted may not exceed that demanded by the complaint. . . . The action was, in fact, tried as a default action, and under the circumstances, it would be unreasonable and unjust to fail to treat it as such." See also *Swanson* v. *Hempstead,* 64 Cal.App.2d 681, 683 [149 P.2d 404].

Lastly, defendant questions the propriety of the allowance of $350 per month alimony in addition to the award otherwise made and to the allowance of $3,000 attorney's fees in what he denominates a mere default action.

The complaint alleged that plaintiff was without funds and defendant had the ability to pay these expenses and allowances. There was no evidence produced as to defendant's present ability to pay this amount of alimony or attorney's fees and court costs other than that indicated. Defendant now claims the trial court, by its award of his separate property to plaintiff, has deprived him of the ability to pay her anything and has stripped him, a 70-year-old man, of everything he possessed and left him to pay a debt of $25,650 for income taxes. In *Vogel* v. *Vogel,* 182 Cal.App.2d 628, 629 [6 Cal.Rptr. 402] it is said:

"An allowance for support must be made 'having regard for the circumstances of the respective parties.' . . . In making that award the trial court has a wide discretion. . . . 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' . . . '[I]t refers to the needs of the parties and the abilities of the parties to meet such

needs, and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' '' (Citing cases.)

There was no particular showing of the amount of work counsel for plaintiff expended on this case. Defendant's counsel, in his brief, says that since counsel for the plaintiff did not ask for this particular sum as attorney's fees, he must have been ''happily surprised'' at the amount the court awarded. In reply, counsel for plaintiff concedes that he was ''happily surprised'' but maintains the court did not abuse its discretion.

Since a retrial must be had on the other issues, a reexamination of these allowances should be made.

Judgment reversed.

Shepard, J., and Coughlin, J., concurred.