SCHAUER, J.
Defendants, husband and wife, have appealed from a judgment against them in an action on a book account for medical services rendered by plaintiff’s assignor *Supp. 749 to the defendant Ada P. Allum before her marriage to the defendant Arthur E. Allum, and while she was the wife of one C. W. Osborne, from whom she later obtained a divorce. Such services, in part at least, were performed while defendant Ada and her then husband, Osborne, were living together, without any agreement upon her part assuming personal liability, and consequently to that extent the obligation to pay for the same became primarily, if not exclusively, the debt of said Osborne. (Chaffee v. Browne, (1895) 109 Cal. 211, 219 [41 Pac. 1028]; Lane v. McAlpine, (1931) 115 Cal. App. 607, 610 [2 Pac. (2d) 184].) As stated in the case last cited “The general rule is that upon the husband is imposed the duty to maintain his wife and children and where the wife living with her husband obtains on credit shelter or supplies needed in the conduct of this common domestic enterprise, she is his agent and incurs no personal liability. ’ ’
In this action, however, plaintiff seeks to recover from the defendants here sued upon the theory that defendant Ada P. Allum, while she was the wife of Osborne, became personally liable for the debt under the provisions of section 171 of the Civil Code, hereinafter quoted, and that defendant Arthur E. Allum upon marriage to Ada became liable for her antenuptial debts. If the Osborne debt for the services rendered does constitute an antenuptial debt of the wife— that is, an obligation for which she is personally liable—then the judgment against the present husband must be sustained (Van Maren v. Johnson, (1860) 15 Cal. 308, 312; Vlautin v. Bumpus, (1868) 35 Cal. 214), even though such debt was contracted by the wife while married to the former husband (Johnson v. Taylor, (1931) 120 Cal. App. (Supp.) 771 [4 Pac. (2d) 999]; 30 Cor. Jur. 585), but if such debt is not a personal obligation of the wife her present husband is in no way responsible therefor. We think the answer to the obvious problem may be found within the terms of the statute and the cases construing it.
As first enacted (in 1872) and as it existed at the time of the decision in Chaffee v. Browne, supra (1895), 109 Cal. 211, said section 171 of the Civil Code merely provided that “The separate property of the wife is not liable for the debts of her husband, but is liable for her own debts, contracted before or after marriage.” In that form it did not purport to, and did not, impose upon either the wife or her property any *Supp. 750 liability not created by her own contract. Under that state of the law the Supreme Court, in Chaffee v. Browne, supra, (1895), 109 Cal. 211, at 219, said: “The law justly imposes upon the husband the duty to maintain his wife and children, and does not absolve him of this duty save under exceptional circumstances; the evidence here shows only the ordinary case where the wife living with the husband obtains on his credit the supplies needed in the conduct of their common domestic establishment; for such purposes she is his agent, and incurs no personal liability; . . . when persons furnishing to families supplies of the character appearing here expect to charge the wife therefor, they must take care that they have a contract for her personal credit ...” That such general rule still obtains is evidenced by the excerpt from Lane v. McAlpine, (1931) 115 Cal. App. 607 [2 Pac. (2d) 184], hereinbefore quoted.
In 1905 (Stats. 1905, p. 206) said section 171 was amended to read: “The separate property of the wife is liable for her own debts contracted before or after her marriage, but is not liable for her husband’s debts; provided, that such property is liable for the payment of debts contracted by the husband or wife for the necessaries of life furnished to them or either of them while they are living together. Provided that the provisions of this act shall not apply to the separate property of the wife held by her at the time of her marriage or acquired by her by devise or succession after marriage.” This amendment introduced the imposition of liability for necessaries of life upon the wife’s separate property to the extent provided, and as limited in the statute, and, since the wife’s property could not be taken without due process of law, it has been held to mean that she must be made a party defendant in any action seeking to impress liability for necessaries upon her property and that in such an action a judgment may be rendered determining certain issues, to wit: “1. Was the debt to recover which the action is instituted contracted for necessaries of life? and, if so, 2. Were such necessaries furnished either to her husband or herself or both while they were living togetherf . . . She [the wife] is entitled to an opportunity, before her separate property capable of being so taken shall be seized in execution ... to show, if she can show, that the conditions prescribed by the statute upon which such property may be so taken do not in fact exist. ... On the other hand, the creditor *Supp. 751 would be entitled to have the wife’s liability fixed by the judgment—that is to say, an adjudication that her separate property which may be taken for that purpose, if any such she has, is subject to execution under such judgment.” (Evans v. Noonan, (1912) 20 Cal. App. 288, 295, 296 [128 Pac. 794].)
In 1915 said section 171 was amended to its present form, which is as follows: “The separate property of the wife is liable for her own debts contracted before or after her marriage, but is not liable for her husband’s debts; provided, that the separate property of the wife is liable for the payment of debts contracted by the husband or wife for the necessaries of life furnished to them or either of them while they are living together; provided, that the provisions of the foregoing proviso shall not apply to the separate property of the wife held by her at the time of her marriage or acquired by her by devise, succession, or gift, other than by gift from the husband, after marriage.”
To correctly interpret said section and the decisions relating to the same it is necessary to bear constantly in mind appreciation of the fact that nowhere in the common law can there be found any basis for imposing personal liability upon the wife for necessaries furnished to her or her husband while they are living together and that said section 171 (either as originally enacted or later amended) does not purport in terms to impose liability personally upon the wife as distinguished from her property. Such decisions, therefore, as Evans v. Noonan, supra (1912), 20 Cal. App. 288, and Ackley v. Maggi, (1927) 86 Cal. App. 631 [261 Pac. 311], in their references to so-called personal liability of the wife under said section, must be understood as dealing with the liability placed on her property by the statute. Aside from significance pertaining to debts contracted upon her personal credit, which present an entirely different matter not involved here, the words used by the courts in certain of the decisions cited, to the effect that the wife is made “personally responsible” and that such statute imposes “a personal liability”, should be regarded as a convenient means of expressing the result attained in the particular cases in which they were used but not as generally enlarging that very limited liability which is created by, and exists only by virtue of, the statute, and which by that statute is imposed upon certain of the wife’s property specifically and not upon her or *Supp. 752 her property generally. If such liability (for necessaries furnished the spouses, or either of them, while living together) were imposed upon the wife’s property generally, then it is possible that a general liability for such debts might be said to have been impliedly placed upon her, but since the only liability created by said section 171 which personally affects the wife is a limited and conditional one which reaches her through her property rather than her property through her, we cannot subscribe to any doctrine which would ascribe to such a narrowly circumscribed property liability the status and concomitants of an antenuptial debt upon her contracting a subsequent marriage.
The two divisions of the District Court of Appeal of the First Appellate District are not in entire accord in construing said section 171. Division One, in Turner v. Talmadge, (1919) 42 Cal. App. 794, at p. 796 [187 Pac. 969], holds: “Section 171 of the Civil Code . . . recognizes such debt [for necessaries furnished the husband] as the debt of the husband and does not make the wife personally liable therefor, but merely provides that when the husband’s property has been transferred to the wife without consideration, this property may be regarded as the property of the husband for the purpose of satisfying any debts of his incurred for necessities furnished to both the husband and wife while living together. The effect of this section is to regard such property as though it had not been transferred.” Such ruling would seem to be in harmony with the theory of the decision of the Supreme Court in Chaffee v. Browne, supra (1895), 109 Cal. 211, and the statute as amended in 1905 and 1915, but we find that in Ackley v. Maggi, (1927) 86 Cal. App. 631, at 635 [261 Pac. 311], Division Two of the said District Court of Appeal, First District, said: “We think the result of the section [171, Civ. Code] is to permit an action to be brought directly against the wife for necessaries of life furnished as described in the section and whether the wife has or in the future may obtain property legally liable for the satisfaction of the judgment so obtained is a matter which may or may not be considered in the form of the judgment, but must in any event be considered at the time of an attempted satisfaction of the judgment out of her property.”
Even if we were to give to the decision last cited (Ackley v. Maggi, (1927) 86 Cal. App. 631 [261 Pac. 311]) the effect of overruling the earlier decision (Turner v. Tal *Supp. 753 madge, (1919) 42 Cal. App. 794 [187 Pac. 969]), although such earlier decision seems sounder in reason and less likely to result in unnecessary multiplicity of actions, we still could not uphold the judgment now before us. The most that respondent can glean from any of the cases cited is a doctrine that a judgment against a wife predicated upon the theory of liability created or implied by section 171 of the Civil Code may be general in terms, deferring until levy of execution judicial pronouncement of its circumscription, thereby imposing upon the apparent judgment debtor the burden of establishing, through possible further litigation, the true character and limits of the statutory liability upon which the judgment is based, or such judgment may within its own terms declare the limitations which encompass the liability imposed by the statute. In neither event can the judgment be satisfied out of any property not covered by such statute and if in the judgment the court undertakes to declare the property out of which it may be satisfied the limitations of the statute may not be exceeded.
Here the court did assume to make such declaration in the judgment, decreeing, after awarding plaintiff the principal sum sued for and costs, “Said Sums of money to be paid out of the separate property of Ada P. Allum and out of the common property of Arthur E. Allum and Ada P. Allum husband and wife.” The obvious meaning of such decree, in so far as it concerns the separate property of the wife, is to order the judgment satisfied out of any separate property possessed by defendant Ada P. Allum; under said section 171 of the Civil Code, hereinabove quoted, and section 168 of the same code declaring that “The earnings of the wife are not liable for the debts of the husband,” the court could properly impose the liability of the judgment only upon such separate property of the said Ada P. Allum, if any, as was acquired by her by gift from her former husband, Osborne, during her marriage to him. Hence the judgment as to Ada P. Allum must be and is reversed and as to her the cause is remanded to the Municipal Court of the City of Long Beach for a new trial.
As to Arthur E. Allum, we think no obligation has been established and that none can be in any event superimposed upon him through the medium of the liability possibly devolving by virtue of the provisions of section 171 of the Civil Code upon certain apparently nonexistent separate *Supp. 754 property belonging (?) to his wife. To see how any such liability could reach him under any theory applicable to the facts of this case even assuming the existence of property subject to operation of the statute, would require a perception as keen as the eyesight attributed to Lewis Carroll’s character Alice, who in her adventures Through The Looking Glass, when asked by the King whether she could see anybody coming down the road, replied that she could see nobody and was immediately congratulated upon her eyesight by the King, who said: “I only wish I had such eyes. ... To be able to see Nobody! And at that distance too! Why, it’s as much as I can do to see real people, by this light!” (Lewis Carroll’s Through the Looking Glass, Rand McNally, 1932 ed. p. 194.)
The very limited liability imposed by the code section here involved, which reaches the wife only through her possession of property acquired as a gift after a certain event and from a special source, which does not reach such property by reason of any personal obligation of the wife, which subjects only such property to payment of the debt and which debt is primarily that of another person (the first husband) who is generally liable therefor, is not a full personal liability and we think it is not within the rule that a husband marries not only his wife but also her debts.
The judgment against Arthur E. Allum is reversed, and since it may be that upon a new trial plaintiff can establish that part of the services were rendered not only to Ada P. Allum but upon her personal contract, liability for which would be incurred by the husband of a subsequent marriage, the cause as to said Arthur E. Allum is also remanded to the Municipal Court of the City of Long Beach for a new trial. Appellants are awarded their costs of appeal.
Shaw, P. J., concurred.