[Civ. No. 28260.   Second Dist., Div. Two.   Aug. 26, 1965.]

CHRISTINA F. NUNAN, Plaintiff and Appellant, v. JOHN MARTIN NUNAN, Defendant and Respondent.

Roland Maxwell, Frank G. Prantil, Paul H. Marston and Richard W. Olson for Plaintiff and Appellant.

Paul T. Erskine for Defendant and Respondent.

HERNDON, J.—The trial court granted appellant an interlocutory judgment of divorce and awarded her alimony in the amount of $200 per month for a period of one year. The court struck from the proposed form of judgment submitted by appellant a provision reserving jurisdiction to determine the amount of such payments, if any, to be made after the expiration of that period.

In her opening brief appellant succinctly declares the nature and extent of her appeal and states her basic contention as follows:

"This appeal is directed to the limitation of the alimony award for the period of one year. It is not directed to the amount of the award or to any other portions of the decree. Therefore, this appeal is limited to a single contention which is stated as follows:

"*The trial court's award of alimony limiting such award to one year was an abuse of sound discretion.*" We have concluded that this contention is valid and that reversal is indicated.

A recent restatement of our Supreme Court of guiding considerations which are of general application in the assessment and review of alimony awards, with an adequate statement of the specific factual setting in which they were being applied, is found in the following language of *Nunes* v. *Nunes,* 62 Cal.2d 33, 38-39 [41 Cal.Rptr. 5, 396 P.2d 37]:

"In determining whether or not to grant alimony, the court should consider the comparative guilt of the parties, the needs of one spouse, and the ability of the other spouse to contribute support. (*Mueller* v. *Mueller* (1955) 44 Cal.2d 527, 530 et seq. [232 P.2d 869].)

"The evidence as to the guilt of the parties is conflicting in some respects, and *the undisputed evidence does not estab-*

*lish as a matter of law that defendant's culpability was greater than that of plaintiff.*

"*The court found that plaintiff could be self-supporting. The record shows that she had emotional difficulties and suffered from diabetes and Bell's palsy but that she was capable of working during her emotional crises and had worked during most of the marriage despite her physical condition, that she had a bachelor's degree in business administration,* that she indicated an intention to resume working, and that, though her earnings had not been substantial in the years prior to the divorce, she had worked only part time. It may be noted that the parties' home awarded to plaintiff was valued at approximately $22,500 with a mortgage of about $6,500, and that plaintiff was also awarded most of the household furnishings and more than $4,000 cash. With regard to defendant's ability to support plaintiff, it is clear that he earned a substantial salary and had a small income from painting.

■ "Even where an innocent spouse is involved, the granting or refusing of alimony in an action for divorce lies largely in the discretion of the trial court. (*Baldwin* v. *Baldwin* (1946) 28 Cal.2d 406, 413 [170 P.2d 670] ; see *Webber* v. *Webber* (1948) 33 Cal.2d 153, 161 [199 P.2d 934].) Although other triers of fact might have become more generously disposed toward plaintiff, under the circumstances of the present case we cannot find that there has been an abuse of discretion. This is not a case like *Webber* v. *Webber, supra,* where an innocent spouse after a 36-year marriage is left with no property or source of income and without training or education which would equip her to earn a livelihood in the competitive world. Nor is it a case like *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 879 et seq. [19 Cal.Rptr. 106], where the dissolution of the 21-year marriage was due solely to the husband's fault, and the innocent wife, who had raised their children and had not worked for a period in excess of 20 years, was to be reduced to straitened circumstances." (Italics added.)

■ The relatively terse record before us reveals that appellant was granted a divorce by reason of respondent's misconduct during a marriage that had survived for a period of approximately 19 years. In contrast with the situation in *Nunes* v. *Nunes, supra,* 62 Cal.2d 33, there is not the slightest suggestion that appellant had been guilty of any misconduct which contributed in any degree to the failure of

this marriage. Respondent did not deny any of the specific acts of gross misconduct ascribed to him by appellant. Therefore, ''in considering the comparative guilt of the parties,'' the trial court on the record before us had nothing to consider but the undisputed guilt of respondent and the unquestioned innocence of appellant.

Also without challenge is the fact that appellant had not worked during her marriage, and, although she had received some training for office work, she was unable even to seek employment at the time of trial by reason of her physical condition. The following undisputed testimony on this subject was recorded:

''Q. Mrs. Nunan, did you recently have an operation? A. Yes. Q. When was it approximately? A. It was a year ago in May. Q. What was the nature of the operation? A. Back surgery. Laminectomy. Q. Tell us what that is. A. It involves five different operations on the back at one time. Q. Well, what was done? A. It takes out a disc. He drills five holes in the spine to let the nerves through. THE COURT: Well, it is fusion? A. Fusion, little chips of the disc had hardened and fallen throughout the area so that they had to be taken out. Some muscles and different things had to be lifted and rearranged. Q. Do you still feel any effects from the condition which this operation was designed to correct? A. Yes, I have great pain most of the time. The doctor—I went to a doctor, the same doctor recently. He said if I didn't improve after the tension is gone—this situation I have is relieved, that it is probably another disc that will have to be removed.''

On cross-examination she was asked: ''Q. Did the doctor tell you that the pending litigation in connection with this law suit might have some effect upon your physical well being?'' She replied, ''Yes, he said this extensive tension I have been under since my operation could have *but he cannot say one way or the other.*'' (Italics added.)

Therefore, appellant's need of an award for her support was clear and unquestioned. The court's award of $200 per month for this purpose indicated its acceptance of this fact. Appellant was entirely dependent upon her husband for support and she testified without contradiction that she would be unable to work for ''probably six months,'' but that if no further complications affecting her physical condition occurred, she intended to seek employment at that time. It is obvious, of course, that at the time of the entry of the interlocutory judgment, there was no evidence before the trial

court sufficient to enable it satisfactorily to determine the probable duration of her then existing disability and of her concomitant need for support.

The assets which this team of husband and wife had accumulated during the long term of their marriage were few and their total net value was not very substantial, relatively speaking. The trial court divided these assets between the parties on approximately equal terms. Appellant was awarded one-half of the furniture and one-half of the sum that respondent was entitled to receive from his former employer by reason of the recent termination of his employment. Respondent estimated this amount at $3,675.

The court found that the family residence was held by the parties in joint tenancy; it was encumbered by a trust deed securing an indebtedness in the amount of approximately $27,800. Although respondent was ordered to make the payments on the secured obligation for a period of six months, the court noted in its minute order that "it is obvious that it must be sold if the parties expect to salvage their equity or solve their financial problems." Hence, even if respondent's estimate as to the value of this residence is accepted, appellant's one-half of the equity to be made available to her upon consummation of the suggested "forced sale" would not be substantial.

Each party was awarded one of the family cars and appellant was ordered to hold respondent harmless from the various debts which she testified she had necessarily incurred during their separation and prior to the granting of the interlocutory judgment of divorce. Respondent was ordered to pay his own indebtednesses and appellant's necessary medical expenses for a period of one year.

The custody of the parties' younger son was awarded to appellant and respondent was ordered to pay $100 per month for his support. The custody of the older son also was awarded to appellant; however, since it was anticipated that he would be attending college, respondent was ordered to pay his tuition and support him directly so long as he remained a student in good standing.

At the time of the granting of the interlocutory judgment, respondent had just been discharged by an employer for whom he had worked for 17 years. However, in the years preceding his discharge he had earned between $16,000 and $17,000 per year depending upon the amount of his annual bonus.

It would thus appear from the record before us that upon the final dissolution of this 19-year marriage, due solely to respondent's wrong, appellant almost surely will be without a home, will have spent the small amounts she received from the essentially equal division of the parties' property, and may or may not be able to find or maintain gainful employment.

If the provision of the judgment under review is allowed to stand, the trial court will be without jurisdiction to grant appellant any relief whatsoever either by way of extending the term of support payments or otherwise, and this no matter whether the condition of disability from which she was suffering at the time of trial has improved or deteriorated and regardless of what the financial circumstances of the parties may be at present. Such a result seriously offends our sense of equity.

We think that in the undisputed circumstances of this case, the trial court should have retained for a longer period the power to make such further orders from time to time as might thereafter be found necessary and proper to do justice between these parties. This power, we think, should have been retained for a sufficient period of time to allow their circumstances to become more settled and predictable than they were at the time this judgment was entered.

As stated in *Brawman* v. *Brawman,* 199 Cal.App.2d 876, 879-880 [19 Cal.Rptr. 106], where a trial court's refusal to grant the wife alimony was held to be an abuse of discretion, although she was left in far better circumstances than appellant in the instant case: "Civil Code section 139 provides *inter alia*:

" 'In any interlocutory or final decree of divorce . . . the court may compel the party against whom the decree or judgment is granted to make such suitable allowance for support and maintenance of the other party for his or her life, or for such shorter period as the court may deem just, having regard for the circumstances of the respective parties. . . .'

"This vests a broad discretion in the trial court. (See West's Ann. Civ. Code, § 139, notes 10, 14, 41, 67 and cases cited and digested thereunder.) Where discretion has been abused, however, appellate courts have reversed the lower court's holding, whether the abuse consisted of an excessive award (as was found in *Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249]) or no award at all (as in *Webber* v. *Webber,* 33 Cal.2d 153 [199 P.2d 934]; *Arnold* v. *Arnold,* 76 Cal.App.2d

877 [174 P.2d 674]). The reason for the rule has been expressed to be: 'That the Legislature has admonished the trial court to make a "*suitable* allowance." '

"The discretion of the trial court 'is not arbitrary . . . "it must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the husband. . . .

In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered." ' "

Of course, there is no question of the trial court's power to grant a "*suitable allowance* for support and maintenance of [appellant] for . . . her life, *or for such shorter period* as the court may deem just, having regard for the circumstances of the respective parties, . . ." Section 139 of the Civil Code expressly so provides. Respondent cites various cases in which judgments allowing no alimony, or granting only short term awards, have been upheld. Each of these cited cases, however, presented valid and influential considerations not present in the instant case.

In *McClellan* v. *McClellan*, 159 Cal.App.2d 225 [323 P.2d 811], *both parties were granted a divorce by reason of the other's wrong*. This was true also in *Nunes* v. *Nunes, supra,* 62 Cal.2d 33. In *Winn* v. *Winn*, 143 Cal.App.2d 184 [299 P.2d 721], the wife was a trained nurse and apparently was in good health and could "resume this occupation" without difficulty. In *Simpson* v. *Simpson*, 134 Cal.App.2d 219 [285 P.2d 313], the appellant wife held teaching credentials and held a temporary teaching position at the time of trial.

The *Simpson* case, however, is of particular interest here. It should not be overlooked that the opinion in that case particularly stresses the fact that the trial court retained the power to extend the 28-month alimony period during the term thereof even though it had made no express reservation of jurisdiction so to do. If a similar period of retained jurisdiction were involved in the instant case, this court would experience little difficulty in upholding the discretion thus exercised. This would be true because a reasonable period of time then would be allowed within which the verity of the assumptions necessarily included in any determination to award less than permanent alimony might be fairly tested.

But here the innocent wife, in effect, either loses her right to appeal from the judgment or incurs the risk that her right to seek modification will be lost by reason of the expiration of

the alimony period while her appeal is pending and undecided. As we shall point out presently, respondent already has successfully urged in the court below his contention that the pendency of this appeal operates to divest the court of jurisdiction to grant any extension whatever.

We need not now decide whether the pendency of the instant appeal does in fact operate to deprive the trial court of jurisdiction to modify the portion of the judgment from which this appeal has been taken. It suffices here simply to hold that under all the circumstances of this case there was an abuse of discretion in ordering such a short limitation upon the court's power to extend the alimony allowance.

Respondent has suggested no reason why such a limited order was made in this case and our independent reflection on the subject has failed to develop any reasonable justification therefor. If in truth appellant was guilty of some wrong which contributed to the destruction of this 19-year marriage (in addition to those stemming from respondent's excessive use of alcohol and his abusive conduct), it is nowhere to be found in the record. If there were some sufficient reason to believe that the appellant *probably* would be physically able to support herself throughout and beyond the one-year period during which the parties would remain man and wife and to which respondent's duty of support was restricted, it similarly is not to be found in the record.

Further, and most importantly, nothing appears herein which would justify placing appellant in the position of being required to choose, perhaps at her absolute peril, between testing the alimony award by appeal or waiving her right to appeal and chancing that modification of the award would be made within the one-year interlocutory period. It is a matter of public record that in this appellate district the average length of time which elapses between the filing of the notice of appeal in a civil case and the filing of the appellate decision therein is approximately 18 months.

That such a risk is more than hypothetical is demonstrated by the instant case. On our own motion we augmented the record to transfer the original file to this court for inspection. It appears therefrom that prior to the expiration of the one-year period fixed by the court in its interlocutory judgment, appellant did move the court to modify its alimony award by extending it. She alleged in support thereof that she had exhausted all the assets which she had received from the division of the property provided for herein and that her back

was still causing her great pain, that she was under the care of a doctor and unable to become gainfully employed. Although she alleged that she had "no means by which she may support herself and that her condition is desperate," her motion for modification was denied apparently upon the ground that the court lacked jurisdiction so to do.

Whether this determination was correct or not, we need not now decide[1] in order to rule that the limiting provision of the judgment which effectively placed her in this position constituted an abuse of discretion in the factual context of the instant case.

It is ordered that the following sentence be inserted in the judgment in lieu of the language which was stricken from the proposed form of judgment as submitted by appellant: "The court hereby retains jurisdiction until further order to determine the amount of the payments, if any, to be made after that period."

As so modified, the judgment is affirmed. (Cf. *Snapp* v. *State Farm Fire & Cas. Co.,* 60 Cal.2d 816 [36 Cal.Rptr. 612, 388 P.2d 884].) Appellant to recover her costs on this appeal.

Roth, P. J., and Fleming, J., concurred.

---

[1] A notice of appeal was filed by appellant from this order but no record has been filed therein.