[Civ. No. 32427.   Second Dist., Div. Two.   Jan. 21, 1969.]

JANICE NEWMAN, Plaintiff, Cross-defendant and Appellant, v. ARCHIE NEWMAN, Defendant, Cross-complainant and Respondent.

Robert J. Schmorleitz for Plaintiff and Appellant.

Eugene G. Berchin for Defendant and Respondent.

ROTH. P. J.—This is an appeal from portions of an interlocutory decree which awarded a divorce to respondent, denied appellant alimony and subordinated to community debts appellant's right to receive from the proceeds of the sale of the equities in parties' residence the amount of her separate property interest therein.

There are two children, one born in 1948 and adopted by respondent, the other born in 1956.

Appellant-wife initiated the action after 12 years of marriage. Respondent-husband cross-complained. Each spouse alleged that the other committed acts of extreme cruelty. Each party was granted a decree.

A letter from respondent to appellant, written in connection with a previous aborted action for separate maintenance, acknowledged that the sum of $8,400 invested in the residence of the parties was separate property of appellant and stipulated that if it were sold appellant should receive that amount "off the top" before there was any other division made of the proceeds of sale.

The trial court found that appellant had a separate property interest in the amount of $8 400 in the equity which the parties had in their residence and provided for repayment to appellant of that amount from the proceeds of sale after community debts were paid from those proceeds and for an equal division of the remainder, if any, between the parties.

Appellant asserts error because the trial court subjected appellant's separate property interest to the payment of community debts. Sale was ordered and jurisdiction reserved.

At the time of the trial the property had not been sold. There was no way for the trier of fact to determine with certainty what the total sales price of the residence would be. Evidence showed the residence to have a market value between $34,000 and $35,000. Based on this figure, there would be after subtracting encumbrances, an equity in excess of the amount of the community debts and the separate property interest of appellant.

There was an extended discussion in the trial court between respective counsel and the trial judge, which respondent urges amounted to an oral stipulation by the parties that community debts were to be paid from the proceeds before payment to appellant of her separate $8,400 interest. The discussion which we have read does not show such an agreement. It does

show that the trial judge and the parties were under the impression that there would be enough to pay both. The discussion concluded with the following statements which make clear appellant's position:

Mr. Schmorleitz, appellant's counsel: "Your Honor, I would like to ask the Court to reconsider the matter of the priority of the payment of debts and place the payment of the $8400.00 in advance of the payment of the community debts as found by the Court, to the end that if there are unpaid community debts and there isn't sufficient to discharge them, then, the parties be chargeable with them half and half, but that the $8400.00 be marked primarily to my client's benefit as a first priority.

"The Court: Well, that lets her come out of this marriage with her $8400.00 intact and him bankrupt, and they entered into this for better or for worse. I don't think the testimony concerning this conduct has indicated to me that she is entitled to come out better than he is. The order will remain."

Pending this appeal, the real property has in fact been sold and the net proceeds thereof are insufficient to pay the obligations as ordered by the trial court and to pay to appellant the sum of $8,400.

Civil Code, section 171[1] states that the separate property of the wife is not liable for the husband's debts. ██ "Debts of the husband" include debts incurred for the benefit of the community as well as the husband's own separate debts. (*Street* v. *Bertolone,* 193 Cal. 751, 753 [226 P. 913]; *Grolemund* v. *Cafferata,* 17 Cal.2d 679, 688 [111 P.2d 641].)

██ The precise language of Civil Code, section 171 indicates that the trial judge erred in requiring the payment of community obligations before payment to wife of her separate property interest.

"Debts of the husband" is defined in *Grolemund* v. *Cafferata,* 17 Cal.2d 679 [111 P.2d 641] and *Street* v. *Bertolone,* 193

---

[1] "The separate property of the wife is liable for her own debts contracted before or after her marriage, but is not liable for her husband's debts; *provided,* that the separate property of the wife is liable for the payment of debts contracted by the husband or wife for the necessaries of life furnished to them or either of them while they are living together; *provided,* that the provisions of the foregoing proviso shall not apply to the separate property of the wife held by her at the time of her marriage or acquired by her by devise, succession, or gift, other than by gift from the husband, after marriage. (Enacted 1872. As amended Stats. 1905, ch. 217, p. 206, § 1; Stats. 1915, ch. 544, p. 920, § 1.)"

Cal. 751 [226 P. 913], to include debts incurred by husband for benefit of community.

If the debt is not for necessaries, the wife's separate property is exempt. If it is for necessaries, the wife's separate property is *still* exempt unless she received the separate property as a *gift* from her husband during marriage.

There are no findings in the record that the community debts were for necessaries or the appellant's separate property was a gift from her husband after their marriage.

*Rosen* v. *Rosen,* 17 Cal.App.2d 601, 603 [62 P.2d 384] and *Birkhauser* v. *Ross,* 102 Cal.App. 582 [283 P. 866], support the proposition that wife's separate property is not liable for the husband's debts other than for necessaries, even when traced with non-exempt property into a new subject matter.

*Medical Finance Assn.* v. *Allum,* 22 Cal.App.2d Supp. 747, 750 [66 P.2d 761], points out that: (1) The wife is entitled to an opportunity, before her separate property capable of being taken to pay for debts shall be seized in execution to show, if she can, that the conditions prescribed by the statute upon which such property may be so taken do not in fact exist.

Discussing other cases, the court in *Allum* says at page 753: "The most that respondent can glean from any of the cases cited is a doctrine that a judgment against a wife predicated upon the theory of liability created or implied by section 171 of the Civil Code [necessaries] may be general in terms, deferring until levy of execution judicial pronouncement of its circumscription, thereby imposing upon the apparent judgment debtor the burden of establishing, through possible further litigation, the true character and limits of the statutory liability upon which the judgment is based, or such judgment may within its own terms declare the limitations which encompass the liability imposed by the statute. In neither event can the judgment be satisfied out of any property not covered by such statute and if in the judgment the court undertakes to declare the property out of which it may be satisfied the limitations of the statute may not be exceeded."

■ Appellant contends that the evidence does not support a divorce to respondent because he did not specifically testify that the acts of cruelty of which there was ample evidence, inflicted upon him by appellant, caused him grievous mental suffering. (*Farrand* v. *Farrand,* 77 Cal.App.2d 840 [176 P.2d 773]; *Belmont* v. *Belmont,* 188 Cal.App.2d 33, 38 [10 Cal.Rptr. 227]), or had any adverse effect upon him.

Respondent's testimony encompassing the throwing of

objects, tearing and cutting of clothing, excessive monetary demands and irresponsibility, leading to borrowing and refinancing beyond the ability of the parties to repay, gambling at cards beyond their means, and other conduct of appellant amply supports the trial court's determination.

Where the acts complained of were such as to inevitably cause grievous mental suffering, a trial judge is justified in drawing the inference of such suffering from those acts. (*Belmont* v. *Belmont, supra,* at p. 38.) ■ Whether certain treatment caused grievous mental suffering is a question of fact, and the trial judge has a broad discretion in determining the sufficiency of the showing in any particular case. (*McFall* v. *McFall,* 58 Cal.App.2d 208, 213 [136 P.2d 580]; *Keener* v. *Keener,* 18 Cal.2d 445, 447 [116 P.2d 1].)

■ We cannot say the trial court abused its discretion in granting a divorce to respondent as well as to appellant.

■ Appellant finally contends that the court erred in denying her alimony.

■ Granting or refusing alimony lies largely in the trial court's discretion. (*Baldwin* v. *Baldwin,* 28 Cal.2d 406, 413 [170 P.2d 670]; *Nunan* v. *Nunan,* 236 Cal.App.2d 838, 840 [46 Cal.Rptr. 443].) Its discretion will not be interfered with on appeal unless abused. (*Baldwin* v. *Baldwin, supra; Stuckey* v. *Stuckey,* 231 Cal.App.2d 382, 386 [41 Cal.Rptr. 792].)

■ The comparative guilt of the parties is only one factor in determining whether alimony should be awarded. (*Mueller* v. *Mueller,* 44 Cal.2d 527, 532 [282 P.2d 869].) ■ The right to receive alimony depends not only upon fault, but also upon a showing that the circumstances of the parties justified the award made. (*Hall* v. *Superior Court,* 45 Cal.2d 377, 384 [289 P.2d 431].) ■ Included in the circumstances to be considered are factors such as the amount of property owned and obligations to be met, as well as ability to earn and actual earnings. (*Hall* v. *Hall,* 42 Cal.2d 435, 442 [267 P.2d 249].)

■ Respondent testified that: in the four previous years, his business had earned a total of $32,000; in 1965 he had earned $2,900; he had refinanced cars to pay bills; had borrowed funds to support his family; the total amount of money he had withdrawn from the business in the last four months prior to the trial of the action was the sum of $1,400; he had no money to pay current bills; he had no money of any kind whatsoever; he owed $3,625 in bills; he is indebted to the Royal Bank of Canada in the sum of approximately $3,400, to

Sun Life Insurance Company in the sum of $670, to his father-in-law in the sum of $600, and to a friend in the sum of $250.

Appellant testified that she suffered from asthma, that she had polio and couldn't stand on her legs for long periods of time, which limited the type of work she could do and there was conflicting testimony on the subject of her illness or inability to engage in gainful employment.

The circumstances of both parties reflected by the record are unfortunate. At the time of the trial, respondent had no money and many obligations; he was indebted for taxes, was unable to meet current bills, and would not be able to continue in business unless he could borrow funds. The court did award custody of the two children to appellant and did require respondent to pay $75 and $125 monthly for the support of each. Appellant was employed part-time as a telephone receptionist earning an income of $49 a week. She had and was awarded a separate property to the extent of $8,400.

On the record before us we cannot hold the court abused its discretion in denying alimony.

The trial court is directed to amend and modify the judgment so as to provide that the proceeds of the sale of the residence shall be used for the payment of (a) all encumbrances; (b) appellant's separate property interest of $8,400; (c) community debts to be paid by husband; (d) any balance equally between the parties.

In all other respects, the judgment is affirmed.

Herndon. J., and Fleming, J., concurred.